## James W. Tillman and others v. Emily Shackleton.

*Married Women: Power to contract in relation to sole property.* Where a married woman keeps a boarding house with the consent of her husband, and controls the entire business, contracts of purchase made by her for the purpose of such business, must be considered as contracts in relation to her sole property, and therefore binding upon her.

Whether her power to contract for property is limited to cases resting on similar principles *quaere:* COOLEY and CAMPBELL, JJ. holding it to be general; CHRISTIANCY J. regarding it as limited by the circumstances, and MARTIN, Ch. J. dissenting.

*Heard May 16th. Decided May 21st.*

Error to Wayne Circuit.

This was an action of assumpsit brought against defendant in error — a married woman who was engaged in keeping a boarding house — for certain furniture purchased by her, for said business.

Judgment was rendered for plaintiff.

The facts are stated in the opinions.

TILLMAN *v.* SHACKLETON.

*C. J. O'Flynn* and *G. V. N. Lothrop*, for plaintiff in error.

1. The defendant purchased the property *in her own name*, for herself, and not for her husband, or as his agent.    Section 1, of the act of 1855. — *Comp. L.* § 3292 allows her to acquire property, both real and personal, "by gift, grant, inheritance, devise, or in any other manner." The term *grant*, is comprehensive enough to embrace a purchase of personal property — 44 *Barb.* 374; 27 *N. Y.* 277; 33 *Id.* 518.

If it is not, the clause *in any other manner*, certainly is.

*a.* The furniture can in no sense be considered as a part of the earnings of the boarding house.    Had it been paid for by money received from the boarders, the case might be different.    The only question then, before the court, is, whether a married woman can become the owner of personal property by purchasing the same in her own name or credit?

*b.* It is to be presumed from the evidence in the case, that defendant carried on the boarding house with the consent of her husband.    Is there anything to prevent a husband from giving his wife her time and earnings? He can give her anything of value which he owns, and no one has a right to object but a creditor.    There is no objecting creditor in this case.

2. If the furniture became the sole property of defendant, then an action is maintainable against her for the purchase money. — *Comp. L.* § 3294.

An action for the purchase price of a thing, is certainly an action in relation to it.

Even if the furniture did not become the sole property of defendant, nevertheless, she is liable personally for the contract price.

Under section 4 of the act of 1855, as amended by the act of 1857, — *Comp. L.* § 3295 — a married woman is

TILLMAN v. SHACKLETON.

liable to be sued upon any contract made by her, in cases where her husband is not in law liable. The husband is certainly not liable in this case. The furniture was not sold to, or purchased by defendant, as the wife, or as the agent of her husband, but was purchased by, and sold to her, *individually*, and upon *her sole credit.* — 3 *Campb.* 22 ; 5 *Taunt.* 356 ; 2 *Hill, S. Car.* 335 ; 1 *Car. & P.* 16 ; *Story on Agency.* § 447.

Under the original act of 1855, the wife was, undoubtedly, only liable to be sued upon contracts in relation to her sole property. The amendment of 1857, however, has clearly made her liable in all cases where her husband is not liable. We submit, that the court did not intend to decide this point formally, in Glover *v.* Alcott.

*J. Caplis* and *F. H. Canfield*, for defendant in error.

The only question presented to this court is, whether the contract sued upon is a valid one, and upon which the defendant in error is personally liable.

We insist that it is not. At common law, there is no doubt that such a contract by a *feme covert* would be wholly void

The statute of this state has, to a certain extent, modified the common law. — 2 *Comp. L. pp.* 966, 967.

But it has not invested the *feme covert* with an unlimited power of contracting in her own name, or to the extent claimed by plaintiff in error in the present action.

By section 1 of this act, it is provided that all the property of every married woman, howsoever or whensoever acquired, shall be and remain her own estate; that the same shall not be liable for her husband's debts, and that it may be contracted, encumbered and conveyed by her in the same manner, and with like effect, as if she were unmarried.

Section 3 provides for the bringing of suits by and against married women in relation to their own separate

property, "and also in cases where the property of the husband can not be sold, mortgaged or otherwise encumbered, without the consent of the wife, to be given in the manner prescribed by law, or when his property is exempted by law from sale on execution or other final process issued from any court against him, his wife may bring an action in her own name, with the like effect as in cases of actions in relation to her sole property, as aforesaid."

Section 4 exempts the husband from liability upon any contracts made by the wife in relation to her sole property.

This action can not be maintained under any of the sections alluded to, which relate simply to the separate property of *femes covert*, for the following reasons:

*First.* The power of a married woman to bind herself by contract exists only where she has, at the time of making the same, separate property in her own right.

*Second.* There is no proof that the defendant in error had any property at the time the contract was made, in relation to which she could contract. The contract was therefore void *ab initio*, and cannot be enforced. Nothing has since transpired to give it validity.

*Third.* The property purchased under the alleged contract sued upon, became the property of the husband. He, therefore, is alone liable for its payment. — 17 *Iowa*, 393; 42 *N. H.* 381; 36 *Penn.* 410; 38 *Id.* 279; 21 *Id.* 349; 3 *E. D. Smith*, 310; 5 *Wis.* 253; 5 *Duer*, 477; 3 *Law Register*, 229; 21 *Barb.* 546, 551; 38 *Id.* 27; 4 *Duer*, 96; 35 *Maine*, 332; 11 *Mich.* 470; 18 *N. Y.* 272.

The presumption of the law on the facts of this case is, that the defendant acted merely as the agent of her husband. The property was brought to his house, was received by him, and he has enjoyed the use of it. He must have known of the purchase at the time it was made, and will be presumed to have assented to and ratified it. The following authorities support fully the proposition: —

*Chitty on Cont.* 166, 161; *Story on Agency*, §§ 160, 161, 270, *note* 3; *Parsons on Cont.* 288; 6 *N. H.* 124; 15 *Conn.* 357.

This suit can not, therefore, be maintained, by virtue of section 3 of the acts upon which the plaintiffs in error rely.

This action can not be maintained by virtue of the provisions of section 4. This section, it is contended, provides for three cases in which suits may be maintained against a married woman.

*First.* Upon contracts made by her in relation to her sole property.

*Second.* Upon contracts where her husband is not in law liable.

*Third.* Where he refuses to perform such contracts.

The most liberal construction of this section will not warrant the conclusion that the defendant in error is liable upon the contract sued upon. We have already shown that it is not a contract in relation to her sole property. And in the absence of proof that the contract was in relation to her sole property, the law will presume that she acted simply as the agent of her husband. He is liable upon the contract, and there is no proof that he ever refused to perform it.

This court can not maintain this action without violating the well established rule of construction, that statutes in derogation of the common law must be strictly construed. — 2 *Mich.* 486; 3 *Id.* 309; 4 *Id.* 332; 21 *Barb.* 558.

The object of the statute was the protection of married women in the enjoyment of their own property, and the protection of creditors upon contracts made with them in relation to such property. It was not intended to repeal all the restrictions imposed by the common law upon the power of *femes covert* to do business on their own account. But such will be its effect if the construction contended for by the plaintiffs be correct. If the defendant in error was capable of making the contract in this

cause, then there is no contract, not in itself void, which a married woman can not legally make, and no commercial enterprise in which she may not engage.

We submit that the judgment of the Circuit Court should be affirmed.

CHRISTIANCY J.

This suit was originally brought by the plaintiffs in error against the defendant in error in a Justice's court, to recover the price of certain furniture sold to the defendant. The Justice rendered judgment for the plaintiffs for two hundred and twenty dollars and costs.

The defendant removed the cause to the Circuit Court by certiorari, where the judgment of the Justice was reversed, and the original plaintiffs have brought the cause to this court by writ of error to reverse the judgment of the Circuit Court.

It appears by the return of the Justice to the certiorari, that on the trial of the cause before him, it was admitted by the parties that the plaintiffs in that suit "sold, and the defendant purchased in her own name, certain furniture of the value of two hundred and twenty dollars; that at the time of said sale and purchase the defendant was a married woman, living with her husband, in a house in Detroit, which was kept as a boarding house; that she had the sole control and management of the house, and received the pay of the boarders; that the furniture, to recover the value of which this suit was brought, was purchased by her for said boarding house, and that it was used for such purpose, and that her said husband had nothing to do with the management of said boarding house, and received none of the profits arising therefrom."

If this evidence fairly tends to show a state of facts which would warrant the judgment rendered by the Justice, then it could not properly be reversed on certiorari,

though the Circuit Court or this Court were of a different opinion upon the weight of the evidence.

We think the evidence clearly tended to show: 1st, That the wife was carrying on the business of keeping a boarding house exclusively on her own account, with the consent of the husband; that she was the sole proprietor of the business and of the property necessarily incident to it, such as the supplies, and the money received for board, and that the husband had in fact no control or management of the business; and 2d, That the sale of the furniture was made to her on her own credit, and not upon that of the husband, and that it was purchased for and used in that separate business. Such we think the Justice was well authorized to find from the evidence to be the state of facts; and, if at liberty to weigh the evidence, we could not find otherwise. To render the husband liable at all, even at common law, for this furniture, the sale must have been made in some way upon his credit, whereas it appears to have been made upon the sole credit of the wife. — *Metcalf v. Shaw*, 3 *Campb.* 22; *Bently v. Griffin*, 5 *Taunt.* 356; *Legget v. Reed*, 1 *C. and P.* 16; *Stammers v. Macomb*, 2 *Wend.* 454; *Shelton v. Pendleton*, 18 *Ct.* 417; This furniture does not appear to come within the range of ordinary necessaries for the use of the family, nor does it appear that the goods came to the use of the husband — (if either of these facts would render him liable when the credit was not given to him.)

The question of the wife's liability, however, depends upon our statute in reference to married women. *Act of 1855, as amended in* 1857. — *See Comp. L.* § 3292 *to* 3295.

By the first section of this act all the property, real and personal, to which the wife "may become entitled by gift, grant, inheritance, devise *or in any other manner*, shall be and remain her estate and property, and shall not be liable for the debts, obligations and engagements of

her husband, and may be contracted, sold, transferred, mortgaged, conveyed, devised or bequeathed by her in the same manner, and with the like effect as if she were unmarried."

By the second section, any person who may hold any property, real or personal, as a trustee for any married woman, may convey to her all or any of the property, or the rents, issues and profits thereof, for her sole and separate use and benefit.

By the third section, actions may be brought by and against her in relation to her sole property, "in the same manner as if. she were unmarried." This section would doubtless, of itself in connection with the first, without the aid of the fourth section, render valid her contracts in reference to her sole property already acquired.

But, by the fourth section, it is provided that the husband of any married woman shall not be liable to be sued upon any contract made by such married woman in relation to her sole property, and the wife shall be liable to be sued upon any contract or engagement made by her in cases where her husband is not in law liable, or where he refuses to perform such contract or engagement. Whether this section renders the wife competent to make any contract having no relation to her sole property, is a question which I do not think necessarily involved in the present case, because I think the facts admitted clearly tended to show, not only that the wife was the sole proprietor of the business of keeping the boarding house (which, of itself, may be regarded as coming fairly within the equity and spirit of the statute as a sole property), but that she also had the sole property, at least in the income of the business; and this furniture being purchased by her upon her own credit, and not that of the husband, for the benefit of, and to be used in carrying on that business, she had

full power to bind herself by the contract of purchase; and that such contract, as well as the action upon it, was "in relation to her sole property," unless it shall be found that she had no power to carry on the business in question on her separate and individual account, and that the business and the property incident and necessary to its prosecution must have vested in the husband.

We have already held that a husband may, under this statute, convey land by deed directly to his wife; and where there are no conflicting claims of the husband's creditors involved, and it is not done for the purpose of shielding his property from his creditors, we can see no legal objection to her acquiring any amount of property directly from the husband, and holding it as her sole property.

And as to the right of the wife to carry on a separate business, upon her own means and credit — while a majority of the court in, *Glover v. Alcott*, 11 *Mich.* 471, (where the question was one of fraudulent concealment of the husband's property to defraud creditors,) held that the wife could not carry on upon credit the general trade or business of a flouring mill, buying wheat and manufacturing and selling flour, the proper attention to which would require all her time and services, and render her incompetent to attend to the duties of her household — yet in that case it was intimated that it was not intended to include within the rule there laid down "any business usually carried on by females, and which consists largely, and almost necessarily of female labor, such for example as that of a milliner." The present is a case which comes clearly within the exception there intimated — a case in which the wife, almost of necessity, becomes practically the head and manager of the business. And we can see no legal objection where the husband assents, to her carrying on the business of keeping a boarding house as her own separate business, and upon her own account, either upon

cash or credit; and we think, under the facts of this case, she must be held competent to make the contract of purchase for the furniture purchased for, and used in her separate business.

The husband's rights are not injured by it. He is in no respect bound by her contract, when the credit is not given to him, and satisfaction of her personal liability can only be enforced against her sole property. We think her contract of purchase comes within the fourth section of the act, and that the judgment of the Circuit Court should be reversed and that of the justice affirmed, with costs.

COOLEY J.

I agree with my brother, Christiancy, that the defendant was liable for the purchase, under the circumstances, appearing in this case, and that the judgment of the Circuit Court should be reversed. I do not place my concurrence, however, on the peculiar nature of the business for which the purchase was made, or regard her contract as depending for its validity on the question whether the defendant was previously possessed of any sole property. There was never any impediment to the acquisition of property through purchase by a married woman: the difficulty was, that at the common law the ownership passed immediately to the husband by virtue of the marriage relation. The statute — *Comp. L.* § 3292 — establishes a new rule, by providing that the property, however acquired, shall be and remain the sole property of the wife, with the same power of control as if she were unmarried. Another section (3295) provides that the husband shall not be liable to be sued upon any contract made by her in relation to her sole property, but that the wife shall be; and I think a contract of purchase is within this section whether she had property before or not. The contract is for the acquisition of sole property; and her title to it, or at least a right in relation to it, vests when the contract is made.

There is, therefore, no straining of terms in saying that the contract has relation to her sole property. The statutes on this subject establish a new system, and are to be construed with a view to give them the effect designed by the legislature, rather than with an effort to retain as much as possible of an old system which they were meant to displace. The rule which they establish is one of general capacity to own property, and to make valid contracts, binding at law and in equity, in relation to it; and I discover nothing in the statute which so limits that capacity as to prevent her making the first acquisition any more than any subsequent one, on credit. Although it was once held (*Brown v. Fifield,* 4 *Mich.* 322) that even the constitutional provision on this subject was to receive a strict construction, because contravening the common law, the subsequent decisions have been based on a different principle, and justly, as I think, have recognized the change designed to be made as quite radical in its nature. And I should be unwilling to lay down any rule which should seem to put upon the wife's power to make contracts on her own behalf, any limitations based upon a strict or technical construction of the statute.

While, therefore, I agree fully with the opinion of my brother, Christiancy, I do not base my judgment exclusively upon the views which he has presented, but should think the action sustainable notwithstanding some of the circumstances upon which he remarks, were absent from the case.

CAMPBELL J. concurred.

MARTIN CH. J.

I do not concur with my brethren. I can not hold that a wife, living in her husband's home with him, can be made liable for necessary household obligations.