CHRISTINA MASON v. ADDISON E. DUNBAR, EXECUTOR.

*Wife's services—Compensation—Bargains with incompetents.*

A wife can recover compensation for services in taking care of her father-in-law, living in the family, if he understands and assents to the arrangement, and if her husband gives up to her his own right to her time and services.

Where a man and his wife live with the man's father, on the father's farm, it is presumed that they are not living together under any contract relation, but as a family, and that there can be no claim for services, or for supplying the ordinary conveniences of life.

Bargains cannot be made with a person who is imbecile, but where a man is merely weak and helpless, and in the exclusive care of his children, there is no legal impediment to their dealing with him if he retains legal capacity, though their bargains should be closely scrutinized.

Error to Monroe. Submitted April 20. Decided April 28.

ASSUMPSIT by Mrs. Christina Mason against Dunbar as executor of the estate of her father-in-law for the amount of a claim against his estate "for care, nursing, attendance, and washing for said deceased, from August 14th, 1876, to June 13th, 1878,—650 days at $2 per day, $1,300." The claim was allowed by commissioners on the estate, and on appeal to the circuit court the judge directed a verdict for the estate. The claimant brings error.

*O. E. Angstman* for plaintiff in error. A husband might give his wife her earnings, at common law, *Connors v. Connors* 4 Wis. 131; 2 Kent's Com. 163; and if the services were not inconsistent with her family duties, she could recover for them, *O'Connor v. Beckwith* 14 Mich. 657; *Glover v. Alcott* 11 Mich. 492.

*Willits & Critchett* for defendant in error. A wife's services belong to her husband, and she has no title to her earnings even though she had agreed for compensa-

tion with the party for whom services were performed, and with her husband's assent. Tyler on Coverture § 478; *Glann v. Younglove* 27 Barb. 480; *Woodbeck v. Havens* 42 Barb. 66; there is no presumption of a promise to pay for services done by one person in a family for another, *Williams v. Hutchinson* 3 Comst. 318; *Bowen v. Bowen* 2 Bradf. Sur. 336.

COOLEY, J. It was decided in *Tillman v. Shackleton* 15 Mich. 447, approved in *West v. Laraway* 28 Mich. 464, that a married woman with the consent of her husband might carry on business on her own account, and be protected in the results thereof against him and against his creditors to the same extent as if she were unmarried. This is the logical result of the statute, which empowers a married woman to hold, sell, mortgage, convey, devise and bequeath as any other person may, any property to which she may become entitled "by gift, grant, inheritance, devise or in any other manner."

It is insisted by defendant that these cases do not rule the present. They decide only that a married woman may carry on a separate business on her own account, and this she may do without encroaching on the common law rights of the husband to the wife's services, which the statute has left undisturbed, and which is as absolute now as it ever was. The present suit is an attempt to appropriate to her exclusive benefit the services of the wife in the family itself; thereby making her altogether independent of her husband, in the household as well as elsewhere.

But my brethren are all of opinion that no distinction can be drawn between the services of the wife performed in and about the house, and those performed elsewhere, as a foundation for a claim to recovery for her own benefit. If the husband can consent to her giving her time and attention to the management of a millinery or dress-making establishment, or to any other regular business away from her home, and if this makes the business

her own, there seems to be no conclusive reason why he may not consent to her making her services in the household available in the accumulation of independent means on her own behalf. He relinquishes his right to her services in the one case no more than in the other, and perhaps in the last case the ordinary course of marital relations is least disturbed. In *Tillman v. Shackleton*, supra, the business for which the wife was preparing was that of keeping boarders, and in *Meriwether v. Smith* 44 Ga. 541 she was to give her personal labor in the cultivation of a cotton crop. In the well considered case of *Peterson v. Mulford* 36 N. J. 481, the labor in the proceeds of which the wife was protected was picking berries, boarding children, selling milk, butter, eggs, etc. My brethren think all these cases are well decided, and that they cannot be distinguished from the present.

The plaintiff claims that her husband and herself alternately took charge of the husband's father, who in his extreme old age was blind and imbecile, and required constant care and supervision, day and night, and that it was distinctly agreed between herself and her husband that for her own services she should receive compensation from the father. If such was the fact, and if the father understood the arrangement and assented to it, the court is of opinion that she would be entitled to recover what would be just and reasonable. The husband had the right to give her for this purpose her services, or to refuse to give them at his option; and if he made the gift, the legal right to deal with the father as a stranger might would follow.

But we are all of opinion that the father must have been made aware of the arrangement, and must expressly or by implication have assented to it before he could have been chargeable with any legal claim in plaintiff's favor. The legal presumption is that the wife is employing her services in her husband's interest; and where she is working with her husband, as was the case here,

a great wrong would sometimes be done if each might present and recover upon separate claims, when the other party supposed and had a right to suppose he was dealing with the husband alone. It is not enough to show that the husband has given the wife her services, but the other party must also understand that contract relations between himself and the wife exist and that the wife expects compensation.

In the present case there are peculiar reasons why the showing that the father expected to pay for the services should be made. All the parties appear to have been living together in the same house upon the father's farm. They were father and children, presumptively living together as a family, and receiving mutual benefit and comfort from their association, and from the property which they enjoyed in common. No presumption can arise under such circumstances that claims were to be made by either against another for services, or for the ordinary conveniences of life which were furnished. On the contrary we must presume that the parties were residing together on the usual terms of members of one family, and not under any contract relations.

It is claimed by the executor that on the facts sworn to by the claimant and her husband the father was helpless in their hands, and they virtually occupied the position of guardian to him. *Jacox v. Jacox* 40 Mich. 473. Under such circumstances, it is said, they should not undertake to bargain with him, but should procure the appointment of a legal guardian who could deal with them on equal terms. We agree that if he was an imbecile, they could not bargain with him, and if he was simply weak and exclusively in their care, all bargains should be closely criticised, and the utmost fairness insisted upon. In dealing with him they would have been exposed to serious suspicions, but there was no legal impediment so long as he retained legal capacity.

We all agree that claimant gave some evidence on

which she was entitled to go to the jury, and which she should have been permitted to follow with other evidence tending in the same direction.

The judgment must therefore be reversed with costs and a new trial ordered.

The other Justices concurred.