EDWARD R. RAYNETT, F. WILLIAM STANDALL AND MARY E. STANDALL v. HAMILTON·BALUSS AND BARBARA BALUSS.

*Land transfer by an incompetent.*

A flighty old man deeded his homestead to his daughter and her husband and they gave him back a life lease of it and were to support him. But they all lived together and quarreled frequently, and finally the son-in-law fell upon him and smote him and drove him out. The old man then went to a lawyer, whom he begged to give him a home, and he promised to deed the land to the lawyer if the latter would get it back. The son-in-law was induced to surrender the land to save himself from prosecution for the assault he had committed, but he proposed to de- d it back to the father-in-law. The lawyer, how-ever, said it should be deeded directly to him, so that the old man's wife should not acquire a dower interest in it. The old man and his wife had separated, and the son-in-law claimed to have paid her for joining in the first deed, and he refused to deed to the lawyer unless the latter would make good that payment. An arrangement was finally made on that basis, and the lawyer gave his note for the amount and a mortgage on the land to secure it. The old man then went to live with the lawyer, but on the next day left him, and he

and his daughter and son-in-law filed a bill to set aside the deed to the lawyer as having been obtained by fraud. *Held*, that as on the evidence the old man was incompetent to do business and everybody knew it, not only that deed but all the others should be set aside and the note and mortgage declared void, and the land deeded back by the lawyer to the old man, whom the Court recommend to guardianship. But as no fraud appears on the lawyer's part as against the son-in-law and his wife, the bill should be dismissed as to them with the costs of solicitors' fees in both courts to the defendant, while the old man should also recover the costs of both courts.

Appeal from Wayne. (Jennison, J.) June 5.—Sept. 23.

BILL to set aside deed, etc. Complainant appeals. Affirmed, with modifications.

*Moore & Moore* and *Ervin Palmer* for complainant. An attorney is bound to serve his client's interest, and the law will closely scrutinize transactions between them: *Gray v. Emmons* 7 Mich. 538: Story Eq. Juris. § 310; *Briggs v. Withey* 24 Mich. 136; *Boxheimer v. Gunn* 24 Mich. 382; *Hooker v. Axford* 33 Mich. 456; *Roman v. Mali* 42 Md. 513; *Haight v. Moore* 37 N. Y. Sup. Ct. 161; *McMahan v. Smith* 6 Heisk. 167; he buys outstanding titles for his client's benefit: *Smith v. Brotherlin* 62 Penn. St. 461; *Linsley v. Sinclair* 24 Mich. 380–2; *Hooker v. Axford* 33 Mich. 456; *Payne v. Avery* 21 Mich. 524; *Cameron v. Lewis* 56 Miss. 601; *Roman v. Mali* 42 Md. 513.

*Hamilton Baluss, Simon R. Harris* and *Henry M. Cheever* for defendants.

CHAMPLIN, J. The bill of complaint was filed in this cause for the purpose of setting aside a deed executed by F. William Standall and Mary E., his wife, to defendants, bearing date October 19, 1882, conveying to them the southwest quarter of the southwest quarter of section seven, in township three north, range nine east. Raynett had owned these premises since 1862, and had occupied them as a homestead. Complainant, F. William Standall, is a son-in-law, and Mary E. Standall is a daughter, of Raynett. In January, 1881, Raynett and his wife conveyed the premises to William F. Standall and Mary E. Standall, they giving back to Raynett a life-lease of the property. Although there was no agree-

ment in the papers which passed between Raynett and his son-in-law and daughter, for the support of Raynett, it was understood that they were to support him, and they lived in one family upon the premises. Raynett appears to be a weak-minded old man, who cannot give his age exactly, but says it is sixty-odd years. He has been regarded by his neighbors, for the past six years, as incapable of transacting business, and we are quite satisfied, from the testimony, that Mr. Raynett, at the time of the transactions referred to in the bill of complaint, was an imbecile, and incapable of entering into or making a binding contract. His first wife had died some six years before and he had married again and separated from the second wife. He was a weak and fickle-minded old man, a believer in dreams, and an easy subject to crafty or designing men. It appears that after he had conveyed the land to his son-in-law and daughter frequent quarrels sprung up between them, and his son-in-law had committed an assault and battery upon him, and abused him to such an extent that, fearing for his life, he had fled from the house.

He had applied to the defendant, Hamilton Baluss, for advice and protection, and requested him to provide a home for him. Baluss was an attorney, residing at Wayne, and was well acquainted with Raynett. He knew his fickle-mindedness, and at first refused to have anything to do with him. Raynett wished to get back the land he had conveyed to Standall and wife, and requested Baluss to assist him in so doing, and authorized him to pay Standall not exceeding two hundred dollars for a deed. And in case he should succeed he offered to convey the land to Baluss if he would support him and provide him a home. At the time Raynett left the premises for fear of his life, he applied to a justice of the peace by the name of Walker, and made complaint, and caused Standall to be apprehended to find sureties of the peace. At the same time he again applied to Baluss and besought him to provide him a home in his family. Mr. Baluss declined, without his wife consented to the arrangement, and as she was absent from home her consent could not be obtained until she returned, which was within a cou-

ple of days.   Raynett prevailed upon her to consent to his proposition, which was that he should convey the premises to Mr. and Mrs. Baluss, and they should provide him a home in their family.   Standall was arrested and brought before the justice.   He employed Z. S. Knickerbocker, an attorney at Wayne, to defend him.   The examination was postponed until afternoon, and in the meantime it was made known to Standall that if he would reconvey the premises to Raynett, the proceedings against him would be discontinued.   This he agreed to do, and requested Mr. Knickerbocker to prepare a deed for himself and wife to execute, which was done.

On showing this deed to Mr. Baluss he objected to it, and stated that the deed should be executed to himself and wife, instead of Raynett.   Standall refused to execute the deed to Mr. and Mrs. Baluss, unless Baluss would pay him one hundred dollars, which he claimed he had paid to Raynett's second wife to induce her to join her husband in the deed to him and Mrs. Standall.   Baluss claimed that it was Mr. Raynett's wish that the property should be conveyed direct to him and wife, and one reason was that, if conveyed to Raynett, the dower interest of his wife would again attach to the land.   It was finally arranged that the deed should run to Mr. and Mrs. Baluss and they should give back a note and mortgage to Standall for one hundred dollars, payable on or before three years after date.   This was on the 19th day of October, 1882.   Raynett went to defendants and stayed that night, and the next morning he stated he had a dream, and there was going to be trouble, and wanted the papers fixed up.   Baluss thereupon went to his office and drew up in duplicate an agreement in reference to his support, as follows:

"Memorandum agreement made and entered into this 19th day of October, A. D. 1882, between Hamilton Baluss and Barbary Baluss of the one part, and Edward Raynett of the other, witnesseth, that the said several parties heretofore, and in consideration of the convenants hereinafter contained, respectfully agree:  *First*, that whereas, the said Hamilton Baluss and Barbary Baluss having acquired the title in fee to the south-west quarter of the south-west quarter of section seven, in the township of Romulus, Wayne county, and State

of Michigan, and the said Edward Raynett holds a life lease of said lands, now it is mutually covenanted and agreed as follows: The said parties of the first part shall board, lodge and do all necessary washing, and decently clothe the said party of the second part so long as the said party of the second part shall see fit to remain and live as one member of said Baluss' family at his house; and the said party of the second part, in consideration of the above covenants, agree that, so long as he shall live with the parties of the first part, as above provided, that the said party of the first part shall have the right of possession and control, and the rents, profits and use of said described lands without other remuneration. And whenever the said party of the second part shall, from any cause, choose to occupy said lands himself, the said party of the first part shall not be liable for the support of the said party of the second part, but the said party of the second part then and thereafter shall be entitled to possession of said lands at the end of any farm year, to wit, on the first day of April thereafter, the intention of this instrument being to give the said party of the second part the privilege of living with said Baluss, and be kept by them as aforesaid, and said Baluss having the use and control of said lands, and said Raynett to occupy and control said lands under his life lease, giving to said Baluss the right to enter upon said lands at any time to make needful repairs on said lands or any improvements thereon while said party of the second part may be in possession of the same.

Witness our hands and seals the day and year above written.

——————————— [L. S.]
——————————— [L. S.]
——————————— [L. S.]"

He requested Samuel W. Walker, the justice, to go with him and witness the execution of the instrument by himself and wife. On arriving at the house they found complainant Mary E. Standall there endeavoring to entice her father away, and he refusing to go with her, saying "the die is cast." They read over the above agreement to Mr. Raynett, and he said it was all right, but he would not sign it then, and at the importunities of his daughter he departed with her, and soon after this suit was commenced. The bill charges that the obtaining of the deed, running to defendants as

grantees instead of to Edward Raynett, was accomplished by the fraud of the defendant Hamilton Baluss, "and in violation of the just rights of complainants." The bill also contains the following statements:

"That said Edward R. Raynett is an old man and quite weak in body, and quite deaf, and was at the time said conveyance was made from said Standall to Baluss and wife; and said defendant Hamilton Baluss took advantage of said Edward in said transaction and procured said deed to himself and wife by fraud, concealment and deceit; that said Mary is a daughter of said Edward, and is with her husband, said William, occupying said land with him, and that by the deed executed to said Hamilton and Barbara Baluss as aforesaid, they, said William and Mary, are made to covenant and agree with the grantees therein that they are seized in fee of the land thereby conveyed; that the same is free from all encumbrances; and that they would warrant and defend the title to the same to the grantees therein, their heirs and assigns forever, against all lawful claims whatsoever of other persons; that said warranty is false, in that the lease of the premises made to said Edward as aforesaid, for the term of his life, is a lawful claim in his favor against the same. Complainants further show that the said deed made to said Hamilton and Barbara Baluss is void for the fraud of said Hamilton in the obtaining thereof; that the same is a blot and cloud on the title of the said William and Mary to the premises above conveyed, and injurious to said Edward, in that, by it, the said Hamilton and Barbara Baluss seek to deprive him of the title said William and Mary were willing to convey to him, and are ready and willing and hereby offer to convey to him, if the obstruction caused by the same be removed."

And the relief prayed for is that the deed made by F. William Standall and Mary E. Standall be decreed to be void, and that it be set aside and held for nought, and that said Hamilton Baluss and Barbara Baluss release and convey to said F. William Standall and Mary E. Standall all the title, claim and interest purported to be conveyed to them by the last-mentioned deed, and in default of their executing such release, then such decree to operate as a release and conveyance.

So far as the charge of fraud is based upon the fact that Mr. Baluss obtained the deed to be made to himself and wife,

instead of to Mr. Raynett, the proof conclusively shows that it has no foundation whatever. We are entirely satisfied that it was fully understood that the deed was to be made direct to Baluss and his wife, and that such was Raynett's special request, the object being to prevent the second wife from setting up any claim of dower, which she might be inclined to do if the deed was made to Raynett. The charge that the warranty from Standall and wife to defendants "is false, in that the lease of the premises made to said Edward for the term of his life is a lawful claim in his favor against the same," is equally without foundation, for the reason that the covenants of warranty in that deed expressly excepted from their operation the life lease which the grantors had executed to Raynett, and bound defendants to protect them against it.

The transaction, however, cannot be upheld, for the reason that Raynett was not of sound mind; that it had become weakened, by age or some other cause, to that extent that he was incapable of comprehending the terms and effects of the contract, which, it is claimed by defendants, he entered into. Of this imbecility on the part of Raynett, defendants had full knowledge, and it is quite apparent that defendant Mr. Baluss took advantage of this weakness in obtaining the conveyance of the land under the contract he had drawn up for Raynett and himself and wife to execute. With his knowledge of Raynett, and of his changeful disposition, he must have contemplated that in all probability in a very short space of time Raynett would choose to return to his place and remain there, in which event defendants would have secured the title to the farm without any adequate consideration. The agreement was too one-sided to commend itself to a court of equity; and, in view of the facts and the confidential relations which existed between Mr. Baluss as the attorney of Raynett, the conclusion cannot be avoided that he made use of this want of intelligence and this confidence to obtain Raynett's consent to a bargain which operated to do positive wrong to him. *Mason v. Dunbar* 43 Mich. 410.

We have not overlooked the evidence of Mr. Baluss that

he did not occupy the position of attorney for Mr. Raynett. We have no doubt, however, that Raynett considered him employed, and it is quite evident from Mr. Baluss's own testimony, with reference to interesting himself for Raynett in obtaining a reconveyance from Standall, that there was good ground for Raynett to consider such relation as existing. We agree with the circuit court in decreeing the deed from Standall and wife to defendants and the note and mortgage growing out of the same transaction, to be void and of no effect. We are also satisfied from the evidence that the deed set out in the bill from Edward Raynett and wife to F. William Standall and Mary E. Standall is also void for the same reasons that apply to the deed from the Standalls to defendants, namely, the incapacity of the complainant Raynett to make a binding contract of sale. There does not appear to have been any consideration whatever paid by the Standalls to Raynett for the conveyance to them by Raynett of the land in question.

In any view which can be taken of the case, the complainants F. William Standall and Mary E. Standall have no right to the relief prayed for. They were not defrauded by any undue advantage taken by Mr. Baluss of Raynett. We have found that there were no misrepresentations as charged. The conveyance to defendants was their voluntary act. When the complainant F. William Standall was informed that the deed was to be made to the defendants, instead of to Raynett, he took advantage of the situation to demand and obtain a note from defendants, secured by a mortgage on the premises of Raynett. He states in his testimony that he gives up all claim under this note and mortgage, and in his bill of complaint offers to convey the property to Raynett if the obstruction caused by his deed to defendants is removed. A better way, and one more sure to serve the ends of justice, is to declare both deeds void, and decree a conveyance from defendants directly to Raynett. From what appears in the record before us it is apparent that complainant, Raynett, is not a fit person to have the charge and management of his property. The statute has made provision for such cases;

and it is to be hoped that the proper authorities will take appropriate measures for the appointment of a guardian (How. Stat. § 6314) that he may be taken care of in his declining years so far as his property will secure such care.

The decree of the court below will be affirmed, so far as it declares and decrees the deed from F. William and Mary E. Standall to defendants to be void, and so far as it declares the note and mortgage from defendant to Standall to be void; and it will be modified so as to declare the title to the premises described in the bill to be in Edward Raynett, and decreeing the deed from Edward Raynett and wife to F. William and Mary E. Standall, of the premises in question, to be null and void, and directing the defendants to convey to Edward Raynett, by deed duly executed and acknowledged, the premises described in the deed from Standall and wife to them. The bill of complaint must be dismissed as to complainants F. William and Mary E. Standall, with costs of solicitor's fees in both courts in favor of defendants, to be taxed; and the complainant Raynett to recover costs of both courts, to be taxed.

Let a decree be entered here in conformity to the above opinion.

The other Justices concurred.