### *In re* BURNHAM'S ESTATE.

### BRACKETT'S ESTATE *v.* BURNHAM'S ESTATE.

1. HUSBAND AND WIFE—ESTATES OF DECEDENTS—MARRIED WOMEN —SERVICES—RIGHT OF WIFE TO RECOVER—RULE OF LAW.

In an action by a married woman against an estate for services rendered to deceased, evidence of an agreement between the husband and the wife emancipating the latter is insufficient to entitle her to recover; it must also ap-

On right of married women to recover for services rendered outside the home, see note in L. R. A. 1917E, 282.

pear that the party receiving such services assented to the arrangement and understood that contract relations between himself and the wife existed, and that she expected compensation.

2. SAME—CONTRACT RELATIONS—EVIDENCE—SUFFICIENCY.

Evidence that deceased told witness that "I want them (claimant and her husband) to have all I got, and I want them to have it to pay for everything she has done for me. Whatever I owe them they can always put in a claim and get it. I have enough property or money so they can always get what's coming to them," *held,* insufficient to prove that deceased supposed that contract relations existed between himself and claimant or that he was dealing with her.

3. SAME—RIGHT OF MARRIED WOMAN TO EARNINGS—STATUTE.

In view of the effect of Act No. 196, Pub. Acts 1911 (3 Comp. Laws 1915, § 11478), defining and regulating the right of married women to their own earnings, which was neither raised nor discussed, as to services rendered after the act took effect, a new trial is granted.

Error to Kalamazoo; Weimer, J. Submitted June 10, 1919. (Docket No. 84.) Decided October 6, 1919.

Anna C. Brackett presented a claim against the estate of Chauncey Burnham, deceased, for services rendered. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. On the death of claimant, the appeal was prosecuted in the name of William A. Brackett, executor. Judgment for claimant. Defendant brings error. Reversed.

*Lincoln H. Titus,* for appellant.

*Alfred S. Frost* and *Corwin & Norcross,* for appellee.

STONE, J. This is the second appearance of this case in this court. When here on the former occasion, it will be found reported in 199 Mich. 326. For a

full statement of the history of the case, reference is had to the former opinion. The case was reversed and a new trial ordered for the single error there pointed out. The case has been retried, resulting in a verdict and judgment for the claimant in the sum of $1,302.36, and the defendant has brought the case here upon writ of error. Many errors are assigned by appellant, but in our opinion the single meritorious question presented by the record is, whether there was any evidence, upon the retrial, showing that the arrangement which it was claimed was made between claimant's husband and herself "that she might have whatever she earned" if she would allow Chauncey Burnham to come to the home of William A. Brackett and Anna C. Brackett to live, was ever communicated to Chauncey Burnham, or that such an arrangement was ever accepted by him, or understood, or acquiesced in by him. When the case was here before we said:

"We think the case should have been submitted to the jury upon the claim of Anna C. Brackett for her own services only."

The question now presented was not presented or considered upon the former hearing. The evidence upon the retrial, as well as upon the first trial, upon the right of Anna C. Brackett to have her claim presented to the jury at all, was based upon a claimed conversation between Mr. and Mrs. Brackett, not in the presence of Chauncey Burnham, and was testified to by Mr. Brackett as follows:

"*Q*. Any conversation that you had that was in his presence would not be admissible, but the conversation that was not in his presence would be, so do not say anything in regard to any conversation had while he was present. What, if anything, was said by you to your wife about his staying there when you were talking with her, when Mr. Burnham was not present?

"*A*. I told her if she wanted to keep him she could, and she could have what she could earn."

On cross-examination as follows:

"*Q.* Mr. Brackett, what you have told the jury is what you and your wife have talked about, when Chauncey Burnham was not present, is that right?

"*A.* Yes, sir."

The rule of law in this State seems to be, that under such an arrangement, as claimed between husband and wife, before the wife can recover for services rendered under such circumstances, this agreement must be brought home to the knowledge of the party to be charged, and it must appear that such party assented to, and acquiesced in such arrangement. It is not enough to show that the husband has given the wife her services, but the other party must also understand that contract relations between himself and the wife exist, and that the wife expects compensation. It was, and is, the position of claimant's counsel that this part of the case is sustained by the testimony of the witness Amelia Planck, which was as follows:

"*Q.* And what, if anything did he (Burnham) say to you, how did this conversation come up, and what was said to you?

"*A.* At different times, and one time especially, he was alone in the store and wasn't feeling very well, and I says, 'Why don't you get married?' and he says, 'I don't want to get married. I have got a home over to Mrs. Brackett's and she takes care of me and does all my washing and ironing and everything.' And in the conversation he said, 'I guess I ain't got nobody that I care for, and I want them to have all I got, and I want them to have it to pay for everything she has done for me.' And I said, 'Why don't you make a will?' And he said, 'Because they would fight over a will,' and he says, 'Whatever I owe them they can always put in a claim and get it. I have enough property or money so they can always get what's coming to them.' "

At the close of the plaintiff's evidence defendant's counsel moved for a directed verdict, upon the ground

(among others) that there was no evidence to show that the deceased knew that Anna C. Brackett intended to charge him for the items claimed, or agreed to it. This motion was denied and exception taken.

Defendant requested the court to charge the jury (among other things) as follows:

"2. The plaintiff, or claimant, having failed to produce any evidence that deceased, Chauncey Burnham, knew that Anna C. Brackett, wife of William A. Brackett, claimant, intended to charge him for any services she rendered him, and for which she now claims compensation, and that he assented to the arrangements, neither she, nor her estate, can recover in this action, for in order to bind the estate of Chauncey Burnham, it is incumbent upon the claimant to prove by a preponderance of the evidence that the deceased, Chauncey Burnham, knew that Anna C. Brackett intended to charge him for the items for which she now claims, and that he assented to the arrangements. (Citing cases.) Your verdict will be for the defendant, no cause of action."

This request was refused, and the case was submitted to the jury. The court, in the course of its charge, did charge the jury as follows:

"It must appear to your satisfaction by a preponderance of the evidence that William Brackett, husband of Anna C. Brackett, relinquished to his wife the right to have whatever she might earn in caring for Chauncey Burnham, and that Chauncey Burnham, himself, understood and accepted such arrangement."

The infirmity of the case is that, in our opinion, there was no evidence to warrant the submission of the question to the jury. Neither the testimony quoted, nor any evidence in the case, tended to show that Chauncey Burnham ever knew that the claimant had been emancipated, or knew of the claimed arrangement between the husband and wife, or knew that contract relations between himself and the claimant existed.

This is not a new question in this State. That such evidence is necessary has often been held by this court. In *Mason* v. *Dunbar,* 43 Mich. 407 (38 Am. Rep. 201), Justice COOLEY, speaking for the court, said:

"The plaintiff claims that her husband and herself alternately took charge of the husband's father, who in his extreme old age was blind and imbecile, and required constant care and supervision, day and night, and that it was distinctly agreed between herself and her husband that for her own services she should receive compensation from the father. If such was the fact, and if the father understood the arrangement and assented to it, the court is of opinion that she would be entitled to recover what would be just and reasonable. The husband had the right to give her for this purpose her services, or to refuse to give them at his option; and if he made the gift, the legal right to deal with the father as a stranger might would follow.

"But we are all of opinion that the father must have been made aware of the arrangement, and must expressly or by implication have assented to it before he could have been chargeable with any legal claim in plaintiff's favor. The legal presumption is that the wife is employing her services in her husband's interest; and where she is working with her husband, as was the case here, a great wrong would sometimes be done if each might present and recover on separate claims, when the other party supposed, and had a right to suppose, he was dealing with the husband alone. It is not enough to show that the husband has given the wife her services, but the other party must also understand that contract relations between himself and the wife exist, and that the wife expects compensation."

This case has been approved and followed many times, as is evidenced by the following cases: *Barnes* v. *Moore's Estate,* 86 Mich. 585; *Boughton* v. *Boughton's Estate,* 111 Mich. 26, 28; *Slack* v. *Norton,* 111 Mich. 213, 215; *Decker* v. *Kanous' Estate,* 129 Mich.

146; *In re Barclay's Estate,* 146 Mich. 650; *Heral* v. *McCabe,* 171 Mich. 530, 539.

In *Re Barclay's Estate, supra,* Justice OSTRANDER, in speaking of an objection to the admissibility of certain testimony, said:

"The specific objection to the introduction of this testimony was that such a bargain between husband and wife must be shown to have been brought home to the decedent, and to have been assented to by her. See *Mason* v. *Dunbar,* 43 Mich. 407. If there was an arrangement that claimant should be paid, known and assented to by the husband, to the knowledge of decedent, so that liability to the wife personally was affirmed and liability to the husband was negatived, the rule that 'it is not enough to show that the husband has given the wife her services, but the other party must also understand that contract relations between himself and the wife exist, and that the wife expects compensation' (*Mason* v. *Dunbar*) is not violated."

The difficulty with the instant case is that there was no such evidence, the necessity of which is above indicated. The language:

"And I want *them* to have all I got, and I want *them* to have it, to pay for everything she has done for me.  *  *  *  Whatever I owe *them they* can always put in a claim and get it. I have enough property or money so *they* can always get what's coming to *them.*"

Such language falls far short of indicating that Burnham supposed that contract relations existed between himself and the claimant, or that he was dealing with her.

In *Heral* v. *McCabe, supra,* Chief Justice MOORE, speaking for the court, after quoting from *Mason* v. *Dunbar, supra,* said:

"There is not a particle of evidence in the case from which the inference can be fairly drawn that the de-

fendant understood that he was dealing witn the plaintiff, and that he was to pay her for her services."

That language is very pertinent here.

Counsel for claimant have called our attention to *Ashley* v. *Smith's Estate*, 152 Mich. 197, and especially to the following language:

"It is urged by defendant's counsel that such contract would not be good unless Smith did know of this, but we think this point not well taken. If she had the right, and was competent to make such contract on her part, and he did make it on his, it would bind him, whatever he may have thought about it."

It would appear from a casual reading of the above excerpt that it is in conflict with the cases which we have cited. But a more careful reading shows that it was not the contract relation that was referred to there, but the right on the wife's part to make a contract. If the contract was actually made between claimant and deceased, and it turned out that she was authorized to make it, another question would arise, which is not the precise question we have been discussing, which is the contract relation. No cases are cited, and we do not think it was the intention to overrule the long line of decisions above cited without reference to them. It is also urged by appellant that the record in that case discloses that the questions here presented were not raised on the trial of that case. An examination of the record verifies that statement.

Many other reasons are urged by appellant why the case should be reversed, especially the weakness of the testimony as to the time and value of the services. We think, however, that enough was shown to take the case to the jury upon those questions.

Other questions raised and discussed will probably not arise upon a new trial. Much as we regret to reverse this case again, we see no escape from it, if our numerous decisions are to be observed.

The judgment will be reversed and a new trial granted because of the error discussed.   One of the reasons why we grant a new trial is because the effect of Act No. 196 of the Public Acts of 1911 (3 Comp. Laws 1915, § 11478), entitled "An act defining and regulating the right of married women to their own earnings," has neither been raised nor discussed. What effect that act should have in a case where, as here, no express contract is relied upon, as to services rendered *after* that act took effect, may be a material question.   It is claimed that the period of services extended to November 21, 1914.   See *In re Scully's Estate*, 199 Mich. 181.   Appellant will recover its costs of this court to be taxed.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.