*In re* MAYER'S ESTATE.

1. MARRIED WOMEN—COMMON-LAW RULE THAT HUSBAND IS EN-
TITLED TO WIFE'S EARNINGS CHANGED BY STATUTE.
   Previous to the passage of Act No. 196, Pub. Acts 1911 (3
   Comp. Laws 1915, § 11478), entitling the wife to her earn-
   ings, the common-law rule that a husband is entitled to
   the labor and earnings of his wife obtained in this State.

2. SAME—SEPARATION OF HUSBAND AND WIFE RAISES NO IMPLICA-
TION OF EMANCIPATION.
   The bare facts that plaintiff's husband left her, stayed away,
   and failed to contribute to her support (through whose
   fault not being disclosed), raises no implication of eman-
   cipation entitling her to the proceeds of her labor previous
   to the taking effect of said act.

3. SAME—ESTATES OF DECEDENTS—CLAIM OF MARRIED WOMAN.
   Where plaintiff, a married woman living apart from her
   husband, presented a claim against decedent's estate for
   services extending over a period of 21½ years, *held*, that
   the trial judge should have instructed the jury that there
   could be no recovery on an express contract nor on
   *quantum meruit* prior to the time Act No. 196 became
   operative.

4. APPEAL AND ERROR—LIMITATION OF ACTIONS.
   The application of the statute of limitations, not having
   been raised in the trial court, cannot be considered here.

5. NEW TRIAL—EVIDENCE—WEIGHT OF EVIDENCE—EXCESSIVE VER-
DICT.
   *Held*, that a verdict for $7,800 is, under the law applicable
   to the case, against the great weight of the evidence and
   excessive.

MOORE, C. J., and CLARK, J., dissenting.

Error to Calhoun; North (Walter H.), J. Submit-
ted January 14, 1920. (Docket No. 73.) Decided
April 29, 1920

Alice Rogers presented a claim against the estate

On right of married woman to maintain action for board or
lodging of, or services rendered to, a third person living in the
home, see note in 46 L. R. A. (N. S.) 238.

of Frederick Mayer, deceased, for services rendered. Deceased left no known heirs, and Alex. J. Groesbeck, attorney general, entered appearance under the statute. The claim was allowed in part by the commissioners, and the attorney general appealed to the circuit court. Judgment for claimant. Contestant brings error. Reversed.

*Alex. J. Groesbeck,* Attorney General, *Duane H. Mosier,* Assistant Attorney General, and *Myron H. Nichols,* for appellant.

*Bernard J. Onen,* for appellee.

Steere, J. Frederick Mayer, deceased, was for many years a resident of the village of Homer in Calhoun county, engaged during the greater portion of his residence in keeping a saloon. He died in July, 1917, intestate, leaving an estate consisting of both real and personal property inventoried and appraised in the probate court of said county at a valuation of $8,829.43. He was a single man and died leaving no known heirs at law to inherit his estate. Administration proceedings were instituted in the probate court of Calhoun county and the attorney general entered his appearance in behalf of the State of Michigan under the statute applicable in such cases.

Commissioners on claims were appointed by the probate court and Alice Rogers filed a claim against the estate for services rendered during 21½ years, claiming "the entire estate of said deceased of every nature," stating of what it consisted substantially as described in the inventory. Various hearings were had before the commissioners on claims, and while the matter was pending she filed an amended claim for damages in the sum of $15,000 for breach of contract for services as deceased's housekeeper during a period of over 10 years immediately preceding his death, describing the

nature of the services rendered, and alleging promises by deceased to her on or about the time she went to his home and on different occasions thereafter that he would in consideration therefor leave all his property to her if she remained in his service and cared for him and his home as long as he lived, which had been faithfully performed on her part. Of the three commissioners on claims two reported her claim as allowed at the sum of $7,500, the third, who was chairman, reporting his allowance as "amount of final balance in favor of claimant—$500." The administrator of the estate declined to appeal and the attorney general appealed the proceeding to the circuit court of Calhoun county where it was tried before a jury. At conclusion of claimant's testimony defendant's counsel moved for a directed verdict on various grounds, which was overruled, and a verdict followed in her favor for the sum of $7,800. A motion for a new trial by defendant on various grounds was denied and the case removed to this court by writ of error.

Claimant is a married woman of mature years, separated but never divorced from her husband, Henry Rogers, who for a time was in Mayer's employ and amongst other duties ran a pool room for him adjoining the saloon. Mayer occupied rooms over the saloon and Rogers lived with his wife and son in an apartment over the pool room. While living with and keeping house for her husband, claimant cared for Mayer's rooms and did work of various kinds upon the premises, including assisting her husband in preparing luncheons served in the saloon. Her husband left her about May, 1907, since which time he has not lived with or contributed to her support. Their son, who was then a young man, remained for a time tending bar for Mayer but soon thereafter married and went with his wife to a home of their own.

The case was submitted to the jury on two theories

which were pressed by claimant: *First,* that of a contract between the parties by which deceased was to leave to claimant his property in consideration of her services, for a breach of which contract damages were claimed, and *second,* that under the proofs, irrespective of any express contract being satisfactorily shown, she was entitled to recover upon a *quantum meruit* or implied contract for the reasonable value of her services.

Defendant's assignments of error are based on the contentions that a verdict in favor of the estate should have been directed because there was no contract shown and claimant had already been paid for whatever services she rendered deceased; that if not paid in full she could only recover for services rendered since August 1, 1911, when Act No. 196 of that year (3 Comp. Laws 1915, § 11478) went into effect entitling the wife to her earnings, which before that time belonged to her husband, and that in any event the verdict was against the great weight of evidence, excessive and unsupported by any competent testimony to the extent of the award.

To the general proposition that as a matter of law the husband was entitled to his wife's earnings prior to 1911, numerous decisions of this court leave no room for debate and are controlling. As the law then stood in this State the common-law rule that a husband is entitled to the labor and earnings of his wife unquestionably obtained. Plaintiff's answer to this is an implied emancipation by the husband. The record is silent as to the occasion of and particular reason for Rogers leaving his wife. The bare facts that he did go, stayed away, and has not contributed to her support since appear. Why he went or through whose fault is not disclosed. But it does appear that he left her well nested in their former home, and she remained there as Mayer's housekeeper, well provided for

in apparently congenial company and environments, where she was content to continue for many years with but little visible change in conditions and her home life except the absence of her lawful husband, from whom she was never divorced. No legal implication of emancipation for such a contract as is claimed here arises from her husband's departure under the circumstances disclosed by this record.

Her legal status as a wife and common-law disability as such continued up to the time of this trial except as modified by statute. The married woman's act of 1855 (3 Comp. Laws 1915, § 11485) only abolished the common-law rule relative to the husband's marital rights respecting his wife's distinct, individual property acquired by inheritance, devise, grant, gift, etc. Not until Act No. 196, Pub. Acts 1911, became operative did she acquire the right to her earnings and to make contracts in relation thereto independent of her husband. The law upon the subject of emancipation is recently discussed and clearly stated by Justice STONE in an estate case entitled *In re Burnham's Estate*, 207 Mich. 361.

As to the claimed life contract, several witnesses testified to statements by Mayer on different occasions "that Allie (claimant) and Fern (a little girl who lived with her) would get the property when he was through," that he intended to will his property to claimant and also that he had done so. He in fact made no such provisions, so far as shown. Whatever may have been his expressed sentiments towards her and declarations as to what he had done or was going to do for her, none of their testimony discloses any element of an expressed contract with the possible exception of that by a witness named Markle in which the word "understanding" is especially pointed out and stressed by her counsel as of contractual significance. Markle lived at Albion, where he stated he

was in the real estate and insurance business. He testified that he knew Mayer by sight but had never talked with him beyond passing the time of day before an occasion when they happened to meet on a street corner in Albion, and, as he testifies—

"talked about the wet and dry proposition for a few minutes and then he (Mayer) asked me if I knew enough to make a will and keep my G—d d—n mouth shut about it, that is the expression he used. I said yes, I can make you a will and I think I knew enough to keep my mouth shut about it. * * * He said that he had a lady that had been keeping house for him a good many years and the understanding was when she went to keeping house for him that if he had any property at his death and she was living, that he wanted her to have that property. He wanted to make a will to that effect. * * * He said he would be up in a few days but didn't come. I don't think he ever mentioned the will to me after that. Never came back again to have the will drawn."

*An understanding* that if she survived Mayer "he wanted her to have that property" does not compass the essential elements of an express contract, agreement or promise on his part that if she would remain with and keep house for him, "look after his wants and necessities until his death, he would leave her all his property." This testimony also shows that the mentioned understanding was "when she went to keeping house for him," which was some years before Act No. 196 of 1911 was passed and her disability as a married woman to independently contract in relation to her services had not yet been removed. The jury should have been instructed that there could be no recovery on an express contract, nor on *quantum meruit* prior to the time Act No. 196 of 1911 became operative.

Application of the statute of limitations, suggested at the argument of this case, does not appear to have

been pleaded or urged by defendants before the trial court, or covered by any assignment of error, and cannot be considered here.

As the case must be remanded for re-trial, it is deemed sufficient without further discussion of the evidence at this time to state that upon this record it is the opinion of the court that the verdict is, under the law applicable to the case, against the great weight of evidence and excessive.

For the foregoing reasons the judgment is reversed and a new trial granted.

BROOKE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred with STEERE, J.

CLARK, J. (*dissenting*). The period covered by plaintiff's claim for services was 10 years immediately preceding Mayer's death. For a period of 12 years immediately preceding Mayer's death plaintiff had been wholly abandoned and unsupported by her husband. With the cause of the separation of this husband and wife we are not concerned. Because of the abandonment of plaintiff by her husband and his entire failure to support her she was free to work and receive wages, and to contract as to her services. That a wife might become emancipated from the disability of coverture respecting her earnings was recognized. *In re Burnham's Estate, supra.* See, also, *Schoenberg* v. *Voigt,* 36 Mich. 310; 13 R. C. L. p. 1090; 21 Cyc. p. 1406. As to a wife's right to contract and be liable for medical aid it was said in *Carstens* v. *Hanselman,* 61 Mich. 426:

"Where a husband utterly deserts his wife, it would be a cruel rule for her if she cannot, in his absence, * * * make a binding agreement for any necessary, whether articles to be purchased or professional help, without becoming a public charge."

"A married woman whose husband is a nonresident,

and has lived apart from her for six or seven years, during which time she has provided her own support, may, in an action for personal injuries, recover for medical attendance, although the physician's bill was unpaid when the suit was commenced." *Lammiman* v. *Railway Co.*, 112 Mich. 602 (quoting from syllabus).

The testimony of the witness Markle and the testimony of other witnesses as to declarations and statements of the deceased made an issue of fact for the jury as to whether a contract had been made respecting plaintiff's services.

"It is true, as urged by the counsel for the estate, that neither of these witnesses testified to the contract in the exact terms set out by the claimant, but we do not think it can be said that this testimony has no tendency to prove such a contract. It cannot be supposed that the decedent would go over in detail the terms of his contract with the claimant with every casual acquaintance. These witnesses' testimony, however, tends to show that there was a contract between decedent and claimant, by the terms of which claimant had agreed to stay with decedent until his death, in consideration of which he, decedent, had agreed to 'do well by her.' " *In re Thompson's Estate,* 157 Mich. 669.

"There was abundant testimony tending to rebut the presumption that the services were rendered gratuitously, and the court was fully justified in submitting that question to the jury. The testimony tended to show that the services were performed with the mutual understanding that at the death of Marie L. Williams, claimant should succeed to the estate, and that decedent had agreed to make a will accordingly. When a promise is made to compensate for services by will, and the promisor dies without so providing, the value of the services may be recovered as a claim against the estate." *In re Williams' Estate,* 106 Mich. 490.

See, also, *Shane* v. *Shearsmith's Estate,* 137 **Mich.** 32; *Sykes* v. *City Savings Bank,* 115 Mich. 321; *La-*

*thrope* v. *Sinclair,* 110 Mich. 329; *Luizzi* v. *Brady's Estate,* 140 Mich. 73; *Sammon* v. *Wood,* 107 Mich. 506.

The other assignments of error have been examined and no prejudicial error calling for reversal being found the judgment should be affirmed, with costs to the plaintiff.

MOORE, C. J., concurred with CLARK, J.