LYMAN WRIGHT v. THE ESTATE OF JOHN SENN, DECEASED.

85    191
s48NW 545
129    149

*Estates of deceased persons—Claim for board and care—Implied contract—Parent and child.*

1. Care of an aged and infirm father by a daughter is usually dictated by the better instincts of a common humanity, and is so rarely bestowed upon contract that no *implied* contract can be predicated upon its bestowal or receipt.

2. An aged father lived with a daughter and her husband for a time as one of the family, no agreement being made for the payment of board further than the statement of the father that he intended to pay his way. The father furnished more or less food, and paid to his son-in-law over $200, and to his daughter over $100. After the father's death the son-in-law filed a claim against his estate for 69 weeks' board, washing, mending, nursing, etc., of the father at $5 per week; and on the trial of an appeal to the circuit court from the allowance of a portion of the claim by the commissioners on claims the

above facts were established, and it further appeared that the claimant never made any such claim against the father in his life-time, nor considered that he had any such claim. *And it is held that under these facts the court should have directed a verdict for the estate.*

Error to Livingston. (Newton, J.) Argued February 11, 1891. Decided April 17, 1891.

Administrator brings error from judgment of circuit court allowing claim against estate on appeal. Reversed, and a new trial denied. The facts are stated in the opinion.

*Rollin H. Person,* for appellant.

*D. Shields,* for plaintiff.

McGRATH, J. John Senn died at Iosco in April, 1883, at the home of his daughter Mrs. O'Pelt.

It appears that deceased came from Ohio in March or April, 1881, remained with his daughter Mrs. O'Pelt until July 12 of the same year, and then went to visit his daughter Mrs. Lyman Wright, at Dexter, where he remained till November 1, 1882, and then returned to the home of Mrs. O'Pelt, where he remained till the time of his death.

Lyman Wright, his son-in-law, filed a claim against his estate before the commissioners for board, lodging, washing, and care, to the amount of $345, and an appeal was had to the circuit court.[1] On the trial it appeared that Senn was 72 years of age; that he came to claimant's house upon a visit, and prolonged his stay; that no arrangements were made with reference to the length of his stay, or for his board; that the visit was expected. His daughter testifies that—

---

[1] The commissioners allowed the claimant $200, the account as filed being for 69 weeks' board, washing, mending, room, and care of deceased, at $5 per week.

"He didn't say anything. He just came there.   *   *
*    Nothing was said.   He lived there right along as one
of the family.   *   *   *   Nothing was said about pay
between me and him."

Nothing was said about pay between him and her hus-
band that she ever heard of. It further appears that
before Senn came to live at Wright's he had let them
have some money, and during his stay there he at one
time let Mr. Wright have $200; that at another time he
let Mrs. Wright have $60, at another $40, and that he
had from time to time let them have other moneys, and
Mrs. Wright testified that she didn't keep any track of
the amount of these other moneys, and that at times
when she offered to return to him money that she had
borrowed he refused to take it, and said "he meant to
pay his way through; he didn't mean to be there on me
for nothing;" that during his stay at the Wrights he
frequently bought groceries and meats for the house, and
Mrs. Wright testifies that he bought half of the coffee,
half of the corn-meal, and one-third of the flour used
while he was there; that Wright owned a number of lots
adjoining that upon which his house stood, which he
evidently cultivated, for the wife testifies that the father
worked in the garden; that none of the moneys paid by
the father to Wright or Mrs. Wright were ever paid back.
There is no testimony that at the time he left the Wrights,
or that at any time subsequently during his life, there
was any allusion by the Wrights or by Senn to any
account or accounting between them. Indeed, Mrs.
Wright testifies that there was no intention to make any
charge against her father, or against her father's estate,
for board or washing or care during his stay with the
Wrights until the discovery some time after his death
among the papers of deceased of the following:

"$200. I, Rosina Wright, formerly Senn, promise to pay to her father, John Senn, the sum of two hundred dollars. The father is willing to let this sum stand where it now is as long as he lives. After his death I promise to have the sum deducted from my interest in the estate. "Dated April 1, 1882.

"ROSINA SENN WRIGHT."

Mrs Wright testified before the commissioners that they calculated up to the time of the discovery of this paper that her father's bill was fully paid; that plaintiff had said that he presented this account so as to offset the $200 claim mentioned in the paper, so as not to have that counted against Mrs. Wright. It further appears that Mrs. Wright and her three sisters, after her father's death, went to a lawyer's office, and there made arrangements for dividing up the estate, and Mrs. Wright there stated that there were no claims against the estate anywhere. The claimant was sworn, and testified, under objection, that his wife told him that her father meant to pay his way. The facts so far stated appear from the testimony offered on behalf of claimant, and the plaintiff's claim rested solely upon his testimony and that of Mrs. Wright. The note, a copy of which is given above, was produced, and Mrs. Wright testified that she did not sign it, and knew nothing about it, and claimant produced a witness who testified that Mrs. Wright had done business at his bank, and that the signature, as well as the body of the paper, was in one handwriting, and that it was not Mrs. Wright's handwriting.

The defendant, at the conclusion of the testimony, asked the court to instruct the jury as follows:

"It appears as the claimant's case that John Senn, the deceased, lived with claimant and his wife for a length of time as one of the family; that no agreement was made as to pay further than that Mr. Senn said to Mrs. Wright that he intended to pay his way. It further appears

that he furnished more or less food, and paid the claimant and his wife various sums of money,—to the claimant over $200, and to his wife over $100, the exact amount being unknown. It further appears that the claimant and his wife considered the claim as paid and satisfied; never made a claim against Mr. Senn in his life-time, nor considered that he had any claim. Under these facts I charge you that you must disallow such claim."

But the court refused so to instruct the jury, but left it for the jury to say whether there was any promise, express or implied, on the part of Senn, or any expectation of payment on the part of the plaintiff, and the jury found a verdict for $141 in favor of Wright.

Mrs. Wright testifies that her father required some nursing, but not much; that it was but a day or two that she took care of him in bed; that he had a sore eye that troubled him about two months, and she poulticed it at night when he went to bed; that she assisted him Sunday mornings when he wanted to go to church. Other days he could dress himself. She says:

"I think it was worth five dollars a week to board him and furnish the room and take care of him during the time he was there."

The only witness sworn for defendant, Mrs. O'Pelt, said:

"If my father furnished the portion of the provisions as stated, I do not think his board would be worth more than $1.50 per week."

The court instructed the jury that they must allow the $200 against plaintiff's claim, as well as all other moneys paid by Senn. The jury, however, allowed plaintiff for the full time at the five dollars per week rate, without reference to the contributions of provisions, and credited the estate with the $200 only, entirely ignoring the admitted payment to Mrs. Wright of the $60, the $40, and other moneys of which she kept no account.

We think the court erred in refusing to instruct the jury as requested by defendant. The court instructed the jury that they must be satisfied that the plaintiff expected to be paid for the services, board, etc., but there was absolutely no testimony to go to the jury to show any such expectation. On the contrary, the testimony did show that no charge or claim was made by plaintiff, that there was no account kept, no accounting had, and no intention of making any claim against the estate. It is error to submit to the jury a question of which there is no evidence. If the note of $200 was genuine, and was given by her to deceased April 1, 1882, after the father had been there for nine months, it tended to show that at that time no claim was made against the father for board, etc., and that there was no intention to make such claim. If the paper was not genuine, Mrs. Wright's defense to it was absolute. If it is genuine, it is a proper charge against her portion of the estate, and an heir excuting such a paper cannot be permitted to present a claim which is entirely inconsistent with the execution of such an instrument to offset it.

Again, the court instructed the jury that they must be satisfied that there was a promise, express or implied, before they could find a verdict. In this class of cases the testimony should be clear and explicit, and should not depend upon mere conjecture. Mrs. Wright claims that nothing was said about pay between the father and herself, and nothing between her father and her husband.

It was evidently in connection with these purchases of provisions by the father, and the repayment of these small loans of money by the daughter, that he said, "Keep it, as I am not here for nothing." It is clear from the testimony that the father was generous, and intended to and did pay from day to day as he went along, and that there was no intention to make a charge

against him.  The statement that he "wanted a good living, and would furnish it for himself;" that he "meant to pay his way," and "didn't mean to be there for nothing,"—is entirely consistent with what he actually did. This class of claims should not be encouraged by the courts.  Indeed, it is the duty of courts to protect decedent estates from them, and to require some substantial proof establishing them before allowing juries to speculate as to the existence of the contract necessary to support them.

One of the items for which the claim is made is for care bestowed by Mrs. Wright.  Care of an aged and infirm father by a daughter is usually dictated by the better instincts of a common humanity, and is so rarely bestowed upon contract that no implied contract can be predicated upon its bestowal or receipt.  The law will not associate with the discharge of a purely filial duty an implied obligation to pay for the same.  To support a recovery therefor an express contract must be clearly shown.

The judgment below is reversed, and a new trial denied, with costs of both courts to defendant estate.  Let it be certified to the circuit and probate courts accordingly.

The other Justices concurred.