VAN SLAMBROOK v. LITTLE'S ESTATE.

1. ESTATES OF DECEDENTS—CLAIM FOR SERVICES—INSTRUCTIONS.
   In a proceeding to enforce a claim against a decedent's estate for services rendered by claimant while a member of decedent's family, it was not error to instruct the jury that, to authorize a recovery, it was not necessary to show that a contract was entered into on a particular day, on the one part to perform services and on the other part to pay for the services performed, but that it was sufficient if it appeared that the services were performed by claimant in the expectation that they were to be paid for, and that decedent received the benefit of such services expecting to pay for them.

2. RECEIPT—CONTRADICTION BY PAROL.
   A receipt purporting to be in full for all demands may be shown by parol to have been given solely to induce the wife of the person named therein to join in a conveyance of land to the person signing the receipt, and with the understanding that it should not affect the state of the account between the parties.

Error to Macomb; Tucker, J.    Submitted ·April 2, 1901.   Decided June 4, 1901.

Albert Van Slambrook presented a claim against the estate of David W. Little, deceased, for services rendered. The claim was allowed by the probate court, and defendant appealed to the circuit, where claimant again prevailed.   Defendant brings error.   Affirmed.

*T. M. Crocker* and *Floyd E. Andrews*, for appellant.

*Byron R. Erskine*, for appellee.

Long, J.   This claim is presented by Albert Van Slambrook, who seeks to recover against the Little estate for services rendered by him to Mr. Little in his lifetime, from the year 1883 until the spring of 1888, a period of about five years.   The amount claimed is $500.

Mr. Little was an uncle of the claimant, who had some trouble with his father in the fall of 1882, and went to Mr. Little's house to live under an arrangement by which he was to be paid for his services.   He became of age in the spring of 1888, and about this time went to live with a family by the name of Miller.   It is the claim of claimant that he and Miller soon after this made an arrangement to buy of deceased a certain 40-acre piece of land for $1,700, each to pay $50 down, and each to give a separate mortgage of $800 for the unpaid balance of $1,600; that this was done with the understanding that the $500 due claimant for services to Mr. Little was to be applied on the mortgage signed by claimant, but not until after the death of Mr. Little.   The reason given for not allowing the $500 at the time of purchase was that deceased claimed that his wife would not sign the deed if she knew this $500 was to be allowed.   It is claimed that no deduction was ever made from the mortgage.

On the other hand, it is claimed by the estate that no arrangement was ever made for compensation to claimant other than such as he would receive by being boarded and

clothed as a member of the family; that he was permitted to go on the Lakes in the summer time; that no arrangement was ever made to make a deduction from the mortgage for the services claimed; that, on the day the two mortgages were given, claimant gave a receipt to deceased, which stated, "Received of D. W. Little one dollar and other considerations in full for all services, labor of any kind, performed for him up to this date;" that by the giving of this receipt a settlement was had of everything up to the date of the giving of the mortgages; and that no arrangement was ever made to pay claimant anything after the death of deceased.

It was the claim of claimant that this receipt was given upon a distinct understanding between himself and deceased, for the sole purpose of satisfying Mr. Little's wife; that it was not to be taken into consideration between himself and Mr. Little as a settlement of their matters, and that, notwithstanding the receipt, Mr. Little was still, as between themselves, owing claimant for five years' services, that was to be paid by a deduction from the $800 mortgage; that afterwards the arrangement was made that the $500 was to be paid at Mr. Little's death.

These questions of fact were all submitted to the jury under proper instructions, as follows:

"The *first* question for you to determine is, Did the claimant perform any services for the deceased, and, if so, when? *Second.* Was it mutually understood and agreed that those services were to be paid for by the deceased?"

Certain special questions were also submitted to the jury, and answered, as follows:

"1. Do you find from the evidence in this case that an express contract or agreement was ever made by David W. Little in his lifetime to pay claimant for his services rendered?

"*A.* Yes.

"2. If any express contract or agreement be found to

have existed, was payment to be made when claimant was of age?

"*A.* Yes.

"3. Do you find from the evidence in this case that any contract or agreement was ever made by Little with claimant whereby he expected and did promise to pay him for his services in addition to the compensation he obtained by living in his family until he was 21 years of age?

"*A.* Yes.

"4. If any contract or agreement be found to have been made, was payment to be made at the death of the deceased?

"*A.* Yes."

Counsel for defendant requested the court to charge:

"Claims of this nature and character are not favored by courts, and you are instructed that the claim for services under a contract for five years, between the fall of 1882 and the 1st of March, 1888, has not been shown to have been done under a contract that would enable the claimant to recover for such services."

We think the court was not in error in refusing this request. There is some evidence tending to show a contract for the payment of such services.

It is claimed by defendant's counsel that the court erred in charging the jury as follows:

"It is not necessary in this class of cases to show that, at a given time before the rendition of the services, an oral contract was entered into on a particular day, on the one part to work and perform services, and on the other part to pay for the services so performed, in order to authorize a recovery; but you must be satisfied, by a fair preponderance of the evidence, that it was distinctly understood by both these parties that the claimant was to work for his uncle, Mr. Little, and that Mr. Little was to pay for the work performed or done; that is, you must find that whatever services, if any, were performed by claimant were performed by him in the expectation that the services were to be paid for, and that, on the other hand, Mr. Little, the deceased, received the benefit of such services expecting to pay for them."

We think the court was not in error in this part of the charge.

Error is also assigned on the following portion:

"If you are satisfied that the receipt was given under the circumstances I have detailed, as claimed by claimant, then, notwithstanding the fact of its appearing to cut off from claimant any right to recover, you will cast aside the receipt, and give him such damages as you may, under the instructions I have given you, determine he is entitled to."

All the facts and circumstances surrounding the giving of this receipt were fully detailed by the witnesses. It was the claim of claimant that at the time the mortgages were given, and the agreement made to apply the $500 on one of the $800 mortgages, Mr. Little stated that his wife would refuse to sign the deed of the lands for which it was given unless the claimant gave the receipt; that the giving of the receipt was to make no difference as to the amount of his services; and that the amount was fixed at $500, to be paid at Mr. Little's death. The court, in its charge to the jury, fully submitted these questions, and, in addition thereto, special questions were submitted to the jury, which they answered, in favor of claimant, that the $500 was to be paid at the death of Mr. Little.

We have examined all the assignments of error in the case, and are satisfied that it went to the jury on a full and fair charge by the trial court.

One question is raised upon the ruling of the court in the admission of the testimony of witnesses Rivard and Ryman. We are satisfied that the court committed no error in admitting this testimony.

The judgment must be affirmed.

The other Justices concurred.