## DECKER *v.* KANOUS' ESTATE.

1. ESTATES OF DECEDENTS—CLAIMS—SERVICES OF DAUGHTER—IMPLIED CONTRACT.

> While an express contract is not indispensable to the right of a daughter to recover against her mother's estate for services rendered in caring for the mother in her lifetime, there must at least be sufficient evidence of an implied contract to overcome the presumption of gratuitous service arising from the filial relationship.

2. SAME—SUFFICIENCY OF EVIDENCE.

Hence, where, in a proceeding to enforce such a claim, the statements of decedent, relied on as indicating an intention to compensate claimant, were equally consistent with the theory that a mere bounty was contemplated, and there was nothing to show that the services were rendered by claimant with the expectation that they would be paid for, it was error to permit a recovery.

Error to Genesee; Wisner, J. Submitted November 15, 1901. Decided December 21, 1901.

Caroline Smith (now Caroline Decker) presented a claim against the estate of Olive Kanous, deceased, for services rendered. The claim was allowed in the probate court, and Jonathan T. Kanous, administrator of the estate, appealed to the circuit. From a judgment for claimant, defendant brings error. Reversed.

*Brown & Farley*, for appellant.

*R. C. Johnson* and *George R. Gold*, for appellee.

MONTGOMERY, C. J. The claimant, on appeal from an allowance by the probate court, recovered a judgment against the estate of $416 for services rendered in the care of the deceased in her lifetime. The claimant is the daughter of the deceased, and the evidence shows that she and her mother had lived together for many years in the homestead; that, some time before the decease of Olive Kanous, she gave the claimant a life lease of the 15 acres of ground upon which the house stood; and that, some 5 years before her decease, a guardian was appointed over the estate of Olive Kanous. The family relations continued the same.

There is no evidence of any express contract on the part of the deceased to pay for the care and services claimed to have been rendered. On the contrary, it is undisputed that claimant has stated that there was no such express contract; and much of the undisputed testimony goes

further, and tends to show that there never was any understanding that claimant should be paid for her services. But. in our view, the strength of the appellant's case rests in the fact that there is no sufficient testimony to show that the minds of the parties ever met upon any contract, express or implied. There is testimony from a number of witnesses to the effect that Olive Kanous stated during her last sickness, and after a large portion of these services had been rendered, that Caroline should have her pay for staying with her. There was testimony tending to show that the purpose of giving this life lease was to compensate Caroline for her services, and that the deceased stated that she had supposed that the life lease was a warranty deed, giving to Caroline the right to dispose of the property. But a careful examination of the record indicates that all that was said by deceased was entirely consistent with the idea that the compensation was to be a compensation for kindness shown by Caroline in remaining at home, and such a special bounty as a parent is at times moved to confer upon one of the children to the exclusion of the others. There is nothing in the record which shows that Caroline at any time expected that she was to be compensated for her services at the time the services were performed. It is true, one witness undertakes to say that Caroline was in the room at one time when deceased stated that Caroline was very good to her and took good care of her, and that she ought to have her pay, and that there was enough to pay her, and that she should have her pay. But the cross-examination of this witness demonstrates that she did not understand at the time that Caroline heard the conversation, and the record is barren of any testimony that she did.

There is nothing, therefore, to show that the services were rendered with the expectation of receiving compensation for them on the part of Caroline; and the testimony as to the expectation of deceased is quite as consistent with the theory that what she expected to bestow upon Caroline was a special bounty, as that it was compensa-

tion, as such, for services employed. We have had frequent occasion to deal with cases of this kind, and it has often been said that it is the duty of courts to protect decedents' estates from claims of the character of this; and, while the rule in this State does not require that there shall be an express contract in terms, it does require that there shall be at least an implied contract, and that there shall be enough in the record to overcome the presumption arising from the family relation. See *Mason* v. *Dunbar*, 43 Mich. 407 (5 N. W. 432, 38 Am. Rep. 201); *Wright* v. *Senn's Estate*, 85 Mich. 197 (48 N. W. 545); *Boughton* v. *Boughton's Estate*, 111 Mich. 26 (69 N. W. 94); *Harris* v. *Harris*, 106 Mich. 246 (64 N. W. 15); *Van Fleet* v. *Van Fleet*, 50 Mich. 1 (14 N. W. 671); *Van Slambrook* v. *Little's Estate*, 127 Mich. 61 (86 N. W. 402).

The circuit judge appears to have relied upon the case of *Sammon* v. *Wood*, 107 Mich. 506 (65 N. W. 529). The authority of that case must be limited by the facts shown. It was said that it is not necessary to show that, at a given time before the rendition of the services, a formal contract was entered into, on the one part to work, and on the other to pay, and that "if the facts and circumstances attending the performance of the work and its acceptance are sufficient to rebut the presumption which obtains in such cases, and authorize the inference that both parties acted upon the understanding that the services were to be paid for, that would be equivalent to a promise to pay for such services." This is undoubtedly a correct statement of the rule as applied to the facts in that case. In that case decedent had frequently stated to the claimant that he intended to leave the farm to her in consideration of her services; and it was said, "It was entirely competent for him to agree that, if she should remain with him and look after his wants and those of her mother, she should have all his property." And it was stated that the only question in the case to be determined was, was such a promise made? The answer was, the decedent did more than promise; he

actually conveyed the farm, and in doing so he stated what the consideration was. The real case was upon an executed contract. The difference between that case and the present is very marked. Here claimant is not shown to have rendered any services relying upon her mother's promise to pay, nor is there evidence that she had knowledge of her intention to pay for the services. There is nothing from which a contract can be implied. There are features of the case which are well calculated to enlist the sympathy of the court, but we feel constrained to hold that the claimant's case was not made out by proof.

The judgment will be reversed, and no new trial ordered.

The other Justices concurred.