HIALEY *v.* HIALEY'S ESTATE.

1. ESTATES OF DECEDENTS — IMPLIED CONTRACTS — PARENT AND CHILD—WORK AND LABOR.

    An express contract must be proved to entitle a son residing at home to recover for services rendered his deceased father as a laborer in decedent's factory.

2. SAME—EVIDENCE—PRESUMPTION.

    A son living with his father for whom he works is presumed to contribute the services to the common support.

3. SAME—EVIDENCE—ADMISSIONS.

    Admissions of the deceased that his son was in his employ like any other man, that the son had money coming to him and that his son had not drawn much money, were competent evidence from which an express contract to pay for the services might be inferred.

4. WITNESSES — EXPERT AND OPINION EVIDENCE — COMPETENCY—
  VALUE.
    A carriage manufacturer who had hired carriage trimmers for
    many years by the piece, although not by the day, is, *prima
    facie*, competent to testify to the value of trimmers' services
    by the day in that locality.

5. CONTRACTS—SUNDAY LABOR—EVIDENCE.
    It is competent to prove that claimant worked on Sundays,
    to show his faithfulness, where no compensation is asked for
    the labor.

Error to Lenawee; Chester, J.  Submitted February
23, 1909.  (Docket No. 100.)  Decided May 26, 1909.

John Frank Hialey presented a claim against the estate
of John R. Hialey, deceased, for services rendered.
The claim was disallowed by the commissioners, and
claimant appealed to the circuit court.  A judgment for
claimant is reviewed by defendant on writ of error.
Affirmed.

*William J. Ingersoll*, for appellant.

*Garland R. Gillespie* and *Smith, Baldwin & Alexander*, for appellee.

HOOKER, J.  John Frank Hialey filed a claim for services against the estate of his father, John R. Hialey, deceased, a former resident of Tecumseh.  It was disallowed by commissioners in the probate court, but upon appeal a verdict of $8,000 in claimant's favor was rendered by a jury in the circuit court.  The order usual in such cases was entered, and the cause is before us on writ of error at the instance of the administratrix.

There is testimony in the record indicating that the claimant worked in his father's buggy factory for many years up to the time of his death; that from childhood and up to the time that his father died he lived in the family.  No witness testified to any interview between claimant and his father which could be called an agreement in relation to the subject, and claimant's counsel

rely upon certain evidence, which they say justifies an inference that there was a mutual understanding that claimant was to receive pay for his work at going wages.

An express contract is essential to overcome the presumption that a son who continues to live with his parent is not entitled to compensation for his services; *i. e.*, the law will not imply a contract from the mere rendition of services in such a case, it being presumed that they are members of one family contributing to the common support. Such a contract may be proved, however, by the admission of the party to be charged.

In the present case there is testimony that the father stated that claimant was not in copartnership with him, but was in his employ like any other man. He also stated that he had plenty coming to him to pay for a horse, under circumstances from which an inference might reasonably be drawn that it was coming from him for his son's labor. To another witness he said that he was in trouble because his boy wanted to settle with him, with a view to going to work for another person, and, if he did, he should have to shut up his shop. There was other testimony of similar tendency. This was sufficient to carry the case to the jury, and it was competent evidence. There was other evidence in the case that was consistent with the theory that deceased expected to leave claimant the property when he was through with it. It was not competent to prove a contract, and perhaps was not relied on as being such, but it is a difficult matter to separate it from other testimony which tended to show that Frank worked in his father's shop, how much he worked, the character of his services, and the degree of satisfaction his services gave his father. Thus one Elmer Lockwood, who worked at deceased's factory, said:

" Deceased used to tell me to do as Frank did, and I would win out."

And—

" He said, ' If I would attend to my business, there

might be a chance some time of my being a foreman around there.' "

Also:

" He said that Frank had worked for him a great many years, and hadn't drawed much money, fooled away very much, and that he would sometime undoubtedly own that business."

Counsel for contestant made innumerable objections to this testimony, and in our opinion may thereby have been responsible for giving it undue prominence in the minds of the jury. The testimony seems to have been admissible for some purposes, and, although some of it did not justify an inference that a contract was made, it did throw light on the relation, and, as far as it went either way, gave some plausibility to defendant's claim that no contract was made.

A carriage manufacturer's testimony as to the value of services was objected to upon the ground that he never hired men by the day, but by the piece, and therefore was not competent to testify. This was all the testimony as to the value of claimant's services. The witness said he had built carriages for 49 years in Adrian, but he did not testify that he had any knowledge regarding the value of trimmer's wages except as it is inferable from his hiring trimmers by the piece. We think there was a *prima facie* showing of competency. Counsel did not attempt to show his incompetency on cross-examination, except to get him to say that he never hired by the day. In showing the faithfulness of claimant it was shown that he worked Sundays. We do not discover that compensation was asked for such work.

We discover no other assignments that require discussion.

The order of the circuit court is affirmed.

BLAIR, C. J., and GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.