MOHN *v.* MANSFIELD.

1. DEEDS— CONSIDERATION — PARENT AND CHILD — WORK, LABOR AND SERVICES—VOLUNTARY CONVEYANCE.

Evidence that the daughter of decedent worked for and resided with her father for seven or eight years after she had reached her majority, that decedent had admitted he had agreed to pay her for her services, and subsequently executed a deed of a portion of his property to her, taking a life lease back in payment therefor, was sufficient, in a suit to reform the conveyance by correcting the description, to warrant a finding by the trial court that the deed was executed for a valuable consideration.

2. SAME.

*Held,* that the evidence established the fact of delivery of the deed and that the parties were mutually mistaken in the description of the land.

Appeal from Branch; Yaple, J. Submitted June 16, 1911. (Docket No. 84.) Decided September 29, 1911.

Bill by Mary A. Mohn against John Mansfield and others for the reformation of a deed. From a decree for complainant, defendant Charles Mansfield appeals. Affirmed.

*Lockerby & Bowen,* for complainant.

*Burt E. Barlow,* for defendant Charles Mansfield.

BROOKE, J. Complainant is the youngest of four children of Pizarro Mansfield (now deceased) and defendant Harriet Mansfield. The other three children are the defendants John Mansfield, Charles Mansfield, and Helen K. Annin. When complainant became of age, the older children had left home. She remained with her father and mother some seven or eight years after she attained her majority, assisting in the care of the house and working on the farm. On December 28, 1889, her father was

the owner of 85 acres of land, situate on the northeast quarter of section 26, in township 5 south, of range 5 west, Branch county, Mich. On that day he executed and delivered to complainant a deed of 21¼ acres of land, taking back from her a life lease covering the land described in the deed. Through an error of the scrivener, the description in both the deed and life lease was made to cover land situate upon the *northwest* quarter of section 26, instead of the *northeast* quarter thereof. Pizarro Mansfield had no title to the lands covered by the erroneous description. The evidence leaves no doubt as to what land he intended to convey to complainant. Upon discovery of the error, complainant filed her bill of complaint, praying for a reformation of the description. The bill was taken as confessed against all the defendants, except Charles Mansfield. From a decree in favor of complainant, Charles Mansfield appeals.

Defendant's counsel states that there are three questions involved:

*First.* Was this a voluntary deed ?
*Second.* Were the papers delivered ?
*Third.* Was there a mutual mistake ?

The second and third questions may be disposed of very briefly. The record, we think, conclusively establishes the fact of delivery, and that both parties to the instrument believed at the time of its execution it covered the northeast 21¼ acres of the northeast quarter of section 26.

As to the first question, it is the contention of appellant that the conveyance was purely voluntary and without consideration and therefore not subject to reformation. He urges that under our decisions complainant must show that her services were rendered with the understanding on her part that they should be paid for, and, on her father's part, that he should pay; citing *Mason* v. *Dunbar*, 43 Mich. 407 (5 N. W. 432, 38 Am. Rep. 201); *Wright* v. *Senn Estate*, 85 Mich. 191 (48 N. W. 545); *Harris* v. *Harris*, 106 Mich. 246 (64 N. W. 15); *Sammon* v.

*Wood,* 107 Mich. 506 (65 N. W. 529); *Boughton* v. *Boughton's Estate,* 111 Mich. 26 (69 N. W. 94); *Van Slambrook* v. *Little's Estate,* 127 Mich. 61 (86 N. W. 402); *Decker* v. *Kanous' Estate,* 129 Mich. 146 (88 N. W. 398). Complainant claims, and the learned circuit judge found, that the deed in question was executed "for a good and valuable consideration by her prior to that time paid." The testimony upon which this finding was based was apparently the following:

"*Q.* Now you claim that Mr. Mansfield came over to your house. Just state again what it is that you claim he said, just prior to to the giving of these?

"*A.* He said that Mary had worked at home eight years after she was of age, and he had agreed to give her $100 a year and board and clothes for her labor, and he didn't have the money to give it, and he wanted to fix it in a way she would get it, and asked if it would be all right if he deeded a part of the land and he take a life lease, and we went to the house and talked it over. * * *

"*Q.* Why was it he did this then?

"*A.* So she would—then the way he said he wanted it so she would be sure and have her pay for what she had done; that he had agreed to do, and wanted to fix it, so when he was through with it—so it would be satisfactory to her; so she would have her pay for what she had done."

We have held that—

"Admissions of the deceased that his son was in his employ like any other man, that his son had money coming to him, and that his son had not drawn much money, were competent evidence from which an express contract to pay for services might be inferred." *Hialey* v. *Hialey's Estate,* 157 Mich. 45 (121 N. W. 465).

The testimony above quoted, if credible, clearly establishes the existence of a contract between the father and daughter. We are of opinion that the court below was warranted in its finding.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, BLAIR, and STONE, JJ., concurred.