## *In re* TELLER'S ESTATE.

1. ESTATES OF DECEDENTS—CLAIMS—SERVICES RENDERED—PARENT AND CHILD—PRESUMPTIONS.

   While it is the settled law of Michigan that services performed by a child for a parent are presumptively performed gratuitously, the presumption may be rebutted by evidence that both parent and child acted upon the understanding that the services were to be paid for.

2. SAME—IMPLIED CONTRACT—QUESTION FOR JURY.

   In an action by a son against the estate of his mother for services performed under an arrangement with her that he was to be paid out of the estate, evidence *held*, sufficient to raise a question of fact for the jury.

3. SAME—RELEASE—SETTLEMENT.

   A receipt from the son to the mother expressing a nominal consideration "in full of all demands, accounts, actions, or causes of action whatsoever, to and including this date," is not a settlement conclusively binding upon claimant, where the evidence shows that a similar contemplated receipt to be signed by the mother was not signed, that there was no going over of accounts, or a determination of balances, or a payment of any money by either to the other.

4. FRAUD—ESTOPPEL.

   It is a well understood rule, based upon general principles

of public policy, that courts will not extricate parties from a situation in which, by their own acts, they have placed themselves in perpetrating, or attempting to perpetrate, a fraud on others; that, if fraudulent contracts are executed, courts may not be appealed to to work a restoration of the property, and, if executory, they will not lend their aid to work an enforcement.

5. ESTATES OF DECEDENTS—RELEASE — FRAUD — ESTOPPEL — QUESTION FOR JURY.

Where there was testimony that the mother stated that the receipt was given to her for the purpose of defrauding claimant's wife, but claimant's participation in the fraud, if any, was not conclusively shown, the trial court was not in error in refusing to direct a verdict on the ground. that claimant was estopped to dispute the receipt on the ground of fraud; but the court's refusal to submit the question to the jury, as he was requested by appropriate requests to do, constituted reversible error.

Error to Livingston; Miner, J. Submitted January 16, 1918. (Docket No. 13.) Decided March 27, 1918.

John Teller presented a claim against the estate of Eliza Teller, deceased, for services rendered. The claim was allowed in the probate court, and Ella Madden, an heir, appealed to the circuit court. Judgment for claimant. Contestant brings error. Reversed.

*Roy D. Matthews* and *Edmund C. Shields*, for appellant.

*Louis E. Howlett* and *W. P. Van Winkle & Son*, for appellee.

FELLOWS, J. John Teller filed this claim against the estate of Eliza Teller, deceased, for services performed in the conduct of her farm in Cohoctah township, Livingston county, during the years 1890 to 1899. Deceased was the mother of claimant. It is his claim that he reached his majority during the year 1890 and remained with her on the farm for nine years

under an arrangement that he was to be compensated when she was able so to do, and if he was not paid before her death he should be compensated out of her estate. He obtained a verdict and had judgment thereon at the circuit in the sum of $1,400.

It is first urged as grounds for the reversal of this judgment that the court should have directed a verdict against the claimant because no contract was proved between him and deceased, warranting the submission of that question to the jury. It is the settled law of this State that services performed by a child for the parent are presumptively performed gratuitously, that they are performed in the line of filial duty and compensation cannot be recovered by proof alone of the services and their value. *Wright* v. *Senn's Estate,* 85 Mich. 191; *Boughton* v. *Boughton's Estate,* 111 Mich. 26; *Harris* v. *Harris,* 106 Mich. 246; but it is equally the settled law of this State that in this class of cases it is not necessary to establish that at a given time before the services were rendered a formal contract was entered into by the parent and child, for the payment on the one hand and performance of the services on the other, and it will be sufficient if the evidence establishes that both parent and child acted upon the understanding that the services were to be paid for. Where both parties understood and expected that the services are to be paid for the presumption above adverted to is rebutted. *Sammon* v. *Wood,* 107 Mich. 506; *Ashley* v. *Smith's Estate,* 152 Mich. 197; *In re Abel's Estate,* 173 Mich. 93; *Maynard* v. *Schrumpf's Estate,* 192 Mich. 494; *Galloway* v. *Scully,* 199 Mich. 181. Without detailing the testimony it will be sufficient to say that the testimony of witnesses, who claimed to have talked with deceased in her lifetime, her relatives and neighbors, made a case for the jury within the cases last above cited.

On September 25, 1900, and after the services here

involved had all been performed plaintiff signed and delivered to the deceased the following paper:

"COHOCTAH, Sept. 25, 1900.
"Received of Eliza Teller, one dollar in full of all demands, accounts, actions or causes of action whatsoever, to and including this date.
"JOHN TELLER."

It appears from the testimony that Mrs. Teller prior to this day had caused this receipt, with the date left blank, to be prepared by a justice of the peace, together with a receipt of similar purport from herself to claimant. The testimony of those present when this receipt was signed was to the effect that it was signed at her request, and that she offered to execute the similar paper to claimant, but that he told her he did not want it, and that it was understood that all accounts between them were settled and that claimant had no claim against his mother. To meet this testimony, and it was done in making out the case in chief, claimant's counsel in his opening statement to the jury having admitted the execution of this receipt, there was offered and received in evidence the testimony of witnesses tending to show that deceased, after the execution of this paper, admitted her indebtedness to claimant; the testimony of two witnesses was also given to the effect that they had conversations with deceased shortly before this date in which she expressed herself as apprehensive of trouble from claimant's wife, Maggie, in case claimant should die before she did. They state that they advised her to take a receipt from John. On cross-examination they say, in response to questions asked by defendant's counsel, that they so advised and the receipt was given to beat claimant's wife, Maggie.

Counsel for the estate, while not controverting the rule that a receipt may be disputed, insists that this was something more than a receipt, and that it is con-

clusively established that a settlement of all matters between claimant and deceased was had which could only be set aside for fraud or mistake. It is pointed out that mutual receipts were prepared and that the language found in the receipt in question: "in full of all demands, accounts, actions or causes of action whatsoever, to and including this date," taken in connection with the other paper prepared for Mrs. Teller to sign, conclusively shows a settlement and that the court should have directed a verdict for the estate for this reason. We cannot follow counsel in this contention. Mrs. Teller did not execute the receipt to claimant, there was at this time no going over accounts, or a determination of balances or a payment of any money by either to the other. We think the case on this question is controlled by *Van Slambrook* v. *Little's Estate*, 127 Mich. 61, a case not unlike this one, except that the question of public policy, to which we shall now give attention, was not there raised.

It is a well understood rule that courts will not extricate parties from a situation in which, by their own acts, they have placed themselves in perpetrating or attempting to perpetrate a fraud on others. This is based upon no tenderness for the other party to the fraudulent transaction but is founded upon general principles of public policy. It sounds ill in the mouth of the party engaged in the perpetration of a fraud to claim that the transaction was immoral and fraudulent; courts will leave the parties engaged in such fraudulent transactions where they have placed themselves. If their fraudulent contracts are executed courts may not be appealed to to work a restoration of their property; if their contracts are executory courts will not lend their aid to work their enforcement. *Knight* v. *Linzey*, 80 Mich. 396; *Williams* v. *Clink*, 90 Mich. 297; *Stoney Creek Woolen Co.* v. *Smalley*, 111 Mich. 321; *Bryant* v. *Wilcox*, 137 Mich. 669.

It was well said by Mr. Justice Spofford, speaking for the supreme court of Louisiana, in the case of *Boatner* v. *Yarborough*, 12 La. Ann. 249:

"But judicial tribunals should not be called upon to adjust the balance of profit and loss between joint adventurers in iniquity. No action lies for the price of fraud. The law, whose mission is to right the innocent and to enforce the performance of licit obligations only, leaves parties who traffic in forbidden things and then break faith with [each] other, to such mutual redress as their own standard of honor may award."

If the claimant and his mother, for the purpose of working a fraud upon claimant's wife, Maggie, entered into a scheme or arrangement, whereby the paper above referred to was executed for the purpose of furnishing fraudulent evidence of a settlement between them, it does not lie in the mouth of claimant to assert such fraud for the purpose of defeating the receipt. He must accept the situation in which he, by his fraudulent conduct, placed himself.

At the close of claimant's proofs and again at the close of the case counsel for the estate moved for a directed verdict for the reason, in addition to those already disposed of, that the undisputed testimony showed that the receipt was given for the purpose of committing a fraud on claimant's wife, Maggie. These motions were overruled and error is assigned thereon. Upon a motion for a directed verdict the testimony most favorable to the opposite party must be taken as true and the legitimate inferences to be drawn therefrom most favorable to his case must be permitted. While it is true that the two witnesses heretofore referred to testified on cross-examination to their advice to deceased to have claimant execute the receipt for the purpose of defrauding claimant's wife, and it may be legitimately inferred from the testimony in the case that claimant participated in such fraudulent purpose,

still we are impressed, upon a consideration of all their testimony, together with the other testimony in the case, that it is not conclusively established that claimant did participate in such fraudulent purpose, or that the purpose of giving the receipt was not to relieve her from worry. The court did not err in refusing to direct a verdict for the estate for this reason, but he should have submitted this question to the jury. This he refused to do, although appropriate requests were submitted. It was reversible error not to give these requests or the substance of them.

Aside from the subject last referred to, the charge fully protected the rights of the estate. We have examined the other errors assigned; they are not likely to arise on a new trial and we do not find it necessary to discuss them. For the error pointed out the case must be reversed and a new trial granted, with costs of this court to appellants.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.