Louise Kerckel departed this life in the month of January, 1932, leaving a last will and testament, executed on December 23, 1926, in which her daughter, Erna Kerckel Ferris, was appointed executrix. She duly qualified and entered upon the performance of her duties as such.
Gus Kerckel, a stepson of the deceased, presented a claim against the estate in the sum of $1,099, due as of April 15, 1899, and interest thereon from that date. The proceedings in the probate court are not in the record, but it appears from the statement of counsel that it was there allowed and an appeal taken by the executrix to the circuit court. On the trial the court limited the interest which could be charged to the time of the death of the deceased, and the jury rendered a verdict in favor of the claimant in the sum of $1,200.81, from which the executrix has appealed.
The claimant was born in Germany January 21, 1876. His mother died nine months thereafter, and his father later married the deceased. They came to this country in October, 1891, and took up their residence in the city of Owosso. Mr. Kerckel died in 1922. Plaintiff's claim as filed reads as follows:
"This claimant, at various times previous to April 15, 1899, placed in the hands of Louise Kerckel, from his earnings, various sums of money, which up to April 15, 1899, amounted to $1,099. At *Page 531 
that time he endeavored to obtain from the said Louise Kerckel this money, but she claimed that it was invested and refused to give it to him, but this claimant then and there made an agreement with her, in which she agreed, in the presence of witnesses, to pay this amount out of her estate at her death."
His sister, a married woman, named Marie A. Stegman, who came to this country a few months before her father and stepmother, and who lived in Owosso, testified that the claimant lived in the family home after he came here, but worked for other men; that the deceased had frequently spoken to her about how she was saving claimant's money for him, and at one time told her that claimant had asked her for his money and she had told him "that if he had the money he would spend it, and in time it would be a nice little nest egg. She didn't say anything about when she was going to pay it to him, but that she couldn't get it now because it was invested, but he could get it when she was dead if he wasn't paid before." She was unable to fix the date of this conversation, but knew it was after the claimant had reached the age of 21 years.
Grace Ross, a married woman living in Owosso, testified that claimant worked for her father on a farm in the year 1899, before she was married; that her mother wanted him to make them a loan on a mortgage; that she drove him over to the home of the deceased on April 15th of that year, and —
"When we got there Gus said he came after his money, and she said the money was all invested and he talked with her about it for a while. Finally, in an argument, he said, 'When can I have it?' He said, I want it to put it out on interest,' and she says, 'It is invested now and if you don't get it *Page 532 
during my lifetime you will get it at my death.' He told her he had an opportunity to put it out on a mortgage on mother's farm and get six per cent. interest on it. As to the amount at that time, he said he wanted his $1,099. She said 'it is all invested and if I don't give it to you during my lifetime you can have it at my death.' She did not dispute the fact it was $1,099."
On cross-examination she was asked:
"Whatever you went in the house for, Mrs. Ross, was in Gus's behalf was it not?"
and answered:
"I imagine it would be, it was to — I went over there with him, just went with him to get the money —
"There is no question but what I went in the house. I imagine that it would be in Gus's behalf. We went in there to get the money, yes, sir."
Defendant's counsel then moved to have all of the testimony of the witness stricken from the record "as it appears she was asked there and in behalf of the claimant as his agent and representative." Error is assigned upon the refusal of the court to do so. The motion was based upon 3 Comp. Laws 1929, § 14219, which provides that no person acting as an agent in the making of a contract with a deceased person shall be a competent witness in any suit involving such contract as to matters occurring prior to the death of the decedent. It does not appear that Mrs. Ross took any part in the conversation had between the claimant and the deceased. Clearly, the inhibition of the statute does not here apply. Mrs. Ross was not an agent of the plaintiff within its terms. McCain v. Smith, 172 Mich. 1; Reichert v. Negaunee State Bank, 266 Mich. 413. *Page 533 
The plaintiff was sworn as a witness in his behalf. Defendant's counsel say that prejudicial error was committed by his counsel "by persistently propounding questions to the plaintiff relative to matters that must have been equally within the knowledge of the deceased person." Over objection, plaintiff was permitted to testify that the first work he did after he came to Owosso was at the Estey Manufacturing Company in that city, and that his earnings were at the rate of $3.50 per week. It appearing by questions which defendant's* attorney was permitted to propound to the witness that he was then living at home and that the deceased knew where he was then working, these answers were stricken out. He was then asked whether, after he became of age, he made demand on the deceased for moneys he had turned over to her. An objection thereto was sustained; the court at that time very carefully instructing the jury that the law would not permit him to so testify. This question should not have been asked. In view of the positive testimony of the admissions of the deceased, we are not impressed that the jury in their deliberation could have been in any way influenced by what then occurred.
At the conclusion of the proofs defendant's counsel moved for a directed verdict, based upon the fact that at the time the alleged obligation was incurred by the deceased she was then a married woman, and that there was no testimony tending to prove that the consideration therefor "related to her separate and individual estate or property or in any way benefited her property." This motion was taken under advisement and renewed after verdict, and denied. Error is assigned thereon.
A request for an instruction that in order to hold the estate of the deceased liable for the payment of *Page 534 
plaintiff's claim the jury must find by a preponderance of the evidence that the deceased "contracted such debt in relation to her separate and individual property," was refused and error is also assigned thereon.
Under the law then in force a married woman might lawfully contract with the like effect as if she were unmarried, but a promise or undertaking made by her could not be enforced unless made for the benefit of her separate estate, and the burden of proof rested upon a claimant to establish that fact.West v. Laraway, 28 Mich. 464, cited and quoted from with approval in Werner v. Wegusen, 252 Mich. 41, and in Hartle v.Keefer's Estate, 260 Mich. 188.
The trial court instructed the jury that the questions for them to determine were.
"First, has the claimant, Gus Kerckel, shown by a preponderance of the evidence that he gave to his stepmother, Louise Kerckel, $1,099 to keep for him; and second, has the claimant, Gus Kerckel, shown by a preponderance that on April 15, 1899, that his stepmother, Louise Kerckel, promised him to return the money during her lifetime or that she would fix it so he would get the money at her death."
There is no dispute in the evidence as to the statements made by the deceased on which the right to recover is based. If she admitted that she had received the money from the claimant and had invested it, as the jury found the facts to be, it will be assumed that she was holding it for the benefit of her separate estate.
"It would contravene the plainest principles of justice to allow a married woman to get possession of property under an engagement not binding upon *Page 535 
her and let her repudiate the contract and keep the property."Greening v. Wallace, 257 Mich. 343, 345.
The executrix, called as a witness in her own behalf, testified at length as to the work done by her father in Owosso and the several homes in which the family lived and the moneys paid thereon. She also testified as to the life the claimant led, thus tending to discredit the claim that he at any time could have earned or given to the deceased the $1,099. It appears that in 1899 she was but 131/2 years of age. On cross-examination she was asked as to certain loans made by her mother to her, and admitted, over objection, that she had at one time received from her the sum of $400 and at another the sum of $2,300, both of which she claimed had been repaid. These loans were made during the lifetime of the father, and we think this evidence was admissible in its tendency to show that the mother had separate estate and that a part of it may have been the money which she admitted she had received from the claimant.
It is urged that the verdict was against the great weight of the evidence. Several of the neighbors were sworn by the defendant, and their testimony tends quite strongly to sustain the claim that the plaintiff could not have earned and saved the amount claimed at the time the promise to repay it is said to have been made. Plaintiff's counsel sought to question him concerning the people he worked for, but was met with the objection that such facts were equally within the knowledge of the deceased. This court has said:
"This class of claims should not be encouraged by the courts. Indeed, it is the duty of courts to protect decedent estates from them, and to require some *Page 536 
substantial proof establishing them before allowing juries to speculate as to the existence of the contract necessary to support them." Wright v. Senn's Estate, 85 Mich. 191, 197.
"We have had frequent occasion to deal with cases of this kind, and it has often been said that it is the duty of courts to protect decedents' estates from claims of the character of this; and, while the rule in this State does not require that there shall be an express contract in terms, it does require that there shall be at least an implied contract, and that there shall be enough in the record to overcome the presumption arising from the family relation." Decker v. Kanous' Estate,129 Mich. 146.
But we have here a claim supported by the testimony of two witnesses whose truthfulness is not questioned. While the statements were made by the deceased a number of years before they testified, the circumstances under which they were made were such as would naturally impress what was said upon the minds of persons of intelligence. They were adroitly cross-examined by defendant's counsel, but the jury were evidently impressed that they were telling truth. On the record before us, we cannot say that the verdict rendered was against the great weight of the evidence.
The other errors assigned have received due consideration. In our opinion they do not warrant a reversal.
The judgment is affirmed.
POTTER, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. *Page 537