*In re* HOFFMAN'S ESTATE.

FOOTE *v.* HOFFMAN.

1. EXECUTORS AND ADMINISTRATORS—SERVICES—PARENT AND CHILD
   —PRESUMPTIONS.
   The presumption that services rendered to a mother by a
   daughter are gratuitous is not of itself destroyed by the
   fact that they were not members of the same household,
   yet this fact weakens the presumption, and it may be re-
   garded as giving support to other facts tending to estab-
   lish an implied contract.

2. SAME—IMPLIED CONTRACT—QUESTION FOR JURY.
   Evidence that plaintiff, a married woman living in her own
   home in the same city as her father and mother, in re-
   sponse to her mother's request, gave up her own home
   to care for her mother, who promised her, in her father's
   presence, that she should never regret it, presented a ques-
   tion for the jury as to whether there was an implied
   promise to pay for the services so rendered.

Error to Kalamazoo; Sharpe, J., presiding. Sub-
mitted January 31, 1918. (Docket No. 37.) Decided
March 27, 1918.

Sarah H. Foote presented a claim against the estate
of John A. Hoffman, deceased, for services rendered.
The claim was disallowed by the commissioners and
claimant appealed to the circuit court. Judgment for
claimant. Hugh G. Hoffman, executor, brings error.
Affirmed.

*Harry C. Howard,* for appellant.

*Alfred S. Frost* (*Prentis & Mulford,* of counsel),
for appellee.

STONE, J. This litigation grows out of a claim pre-
sented to the commissioners on claims in the estate of
John A. Hoffman, deceased, in the probate court for

the county of Kalamazoo.   The claim was disallowed by the commissioners, and an appeal was taken to the circuit court by the claimant, who is the daughter of John A. Hoffman and Lizzie R. Hoffman, both deceased.   The claim was for personal services rendered to the said wife of Mr. Hoffman during her last illness and the care of the Hoffman household, as well as for services rendered to said John A. Hoffman after Mrs. Hoffman's death.

In the circuit court the claims, as finally submitted to the jury, were as follows:

> (1) Services as nurse in caring for Lizzie R. Hoffman, wife of John A. Hoffman, and as housekeeper for John A. and Lizzie R. Hoffman from January 7, 1911, to February 26, 1912, date of her death, 59 weeks at $25 per week............ $1,475
> (2) To services as housekeeper for John A. Hoffman from February 27, 1912, to May 4, 1914, 113 weeks at $10.00 per week.................. 1,130
> (3) To services as nurse in the care of John A. Hoffman, and as housekeeper from May 4, 1914 (when confined to his bed), to October 23, 1914, date of his death, 25 weeks at $25.00 per week.. 625

The jury found in favor of the claimant upon the first claim, including interest from March 14, 1916, in the amount of $590.

They allowed nothing upon the second claim.   Upon the third claim they allowed for 25 weeks at $10 per week, $250.   It may as well be stated here that the allowance on this last claim of $250 was set aside by the trial court, and judgment was finally entered for the claimant for $590 only, upon the first claim.

A motion to direct a verdict in behalf of the executor was made, but the decision thereon was reserved under the provisions of Act No. 217, Pub. Acts of 1915 (3 Comp. Laws 1915, § 14568 *et seq.*), and was treated as a motion to enter judgment notwithstanding the verdict of the jury.   From the said judgment the executor has brought the case into this court by writ of

error, and the only assignment of error which was argued in this court was, that under the evidence there could be no recovery, and a reversal is asked on that ground only; it being conceded by the appellant that if the claimant, on the proofs, as matter of law is entitled to recover, the judgment is a satisfactory one and the executor does not care to have it disturbed.

The evidence discloses that John A. Hoffman was the steward at the Kalamazoo State Hospital until, or nearly until, the time of his death. At the time of the transaction here involved his family consisted of himself and wife. He had two adult children, the elder, Mrs. Foote, claimant here, residing with her husband, George E. Foote, in the city of Kalamazoo, and Hugh G. Hoffman, a son, the executor of his will, a traveling salesman, married and residing in the city of Chicago. The Hoffman homestead, then occupied by the deceased and his wife, was located on West street in the city of Kalamazoo.

In the month of January, 1911, Mrs. Hoffman was advised by her physicians that she was afflicted with cancer and probably could live but a short time. At that time Mr. and Mrs. Hoffman were residing alone in the family homestead, Mr. Hoffman himself taking most of his meals at the State Hospital and sleeping in his apartments there considerable of the time. Mrs. Hoffman, upon learning her real condition from the physicians, telephoned her daughter, Mrs. Foote, the claimant, who, with her husband, lived in a house a few blocks away which belonged to Mrs. Hoffman, and from whom they rented. The principal evidence relied upon to sustain the implied contract is talk which occurred when Mr. and Mrs. Foote went to the family home after receiving the telephone message from Mrs. Hoffman. The only testimony on this subject is that of the husband of the claimant. It is very brief and may be stated as follows, as testified to by him:

"She asked us to come over, and stated to us that she had been to Battle Creek that day for a physical examination and that while there she was told she had a fatal malady, a cancer. She asked us if we would close up our house and come over and keep house for them, and take care of her as long as she should live. When we got the telephone message I think we were just about to eat dinner and we went over right after dinner.

"The conversation just related took place as soon as we arrived at the Hoffman home. Mr. and Mrs. Hoffman and Mrs. Foote and myself were present. As I remember it, after telling us of her fatal malady and that the doctors had given her about a year to live, she asked us: 'Will you come over and keep house for us and take care of me, and you will never regret it?' Mr. Hoffman nodded his head and said: 'Yes, we want you to come over.' "

The evidence shows that two days thereafter the claimant and her husband moved over to the Hoffman home, taking their clothing and personal effects, and closed up their house, and continued to live in the family home from that date until the time of the trial. The claimant accompanied her mother to Rochester, Minn., and to Detroit, where she went for medical and surgical assistance. Mrs. Hoffman died February 26, 1912. During this time John A. Hoffman paid the usual household allowance for maintaining the table of $30 a month, which had been the amount he had always paid for that purpose during his married life, or at least the latter years thereof. He also paid the fuel, gas, telephone, and other incidental bills of the house. Toward the latter portion of Mrs. Hoffman's illness there were two trained nurses provided for the care of Mrs. Hoffman, but claimant assisted daily in such care.

As all except the first claim was either disallowed by the jury or set aside by the trial court, we omit from the statement of facts what occurred subsequent to Mrs. Hoffman's death. There is no question raised

that the claimant took charge of the household matters and assisted daily in the care of her mother, whose condition was such that it necessitated the changing of her clothing and bedding frequently; and the claimant, in addition to the other household duties, generally did the washing and laundry work necessary to keep the sick woman in proper condition. No question is raised here that the claimant was not faithful and attentive in the care of her mother, and in her work as housekeeper. It also appeared in evidence, and perhaps should be stated, that Mrs. Hoffman, before her death, had deeded to the claimant and to her son Hugh, the executor here, the house and lot on Cedar street, where the claimant and her husband had been living, subject to a life lease to John A. Hoffman; and it further appeared that, after the death of Mrs. Hoffman, the claimant and her brother, at the request of John A. Hoffman, gave him a quitclaim deed of that property without any actual consideration therefor. It also appeared that, on April 14, 1914, John A. Hoffman made a will, and in that will he devised to the claimant the use of the homestead during her life. The remainder over, and all of his other property were willed to the son, Hugh, the executor and appellant. The inventory of the estate showed that the homestead was of the value of $8,000. All the rest of the estate willed to the son Hugh was inventoried at $8,853.78, while the debts allowed against the estate, and unappealed from, were $2,859.82.

The claimant instituted a contest of the will on grounds of mental incompetency and undue influence. The will was admitted to probate in the probate court on January 6, 1915, and the claimant appealed to the circuit court, but the appeal was dismissed on October 28, 1915, before the filing of the claim under consideration.

The evidence shows that the claim, which is the

basis of this judgment, was never called to the attention of John A. Hoffman during his lifetime. The rental which claimant and her husband paid for the property on Cedar street was $12 per month. After the death of Mrs. Hoffman, and Mr. Hoffman had agreed to let the claimant and her husband live in the homestead, they moved all of their property out of the house which they had rented, and made their home in what had been the Hoffman family homestead. Mr. Hoffman, during his lifetime, continued to pay an allowance of $30 per month for the table. It also appeared, upon the cross-examination of claimant's husband, that he gave to John A. Hoffman a note for back rent upon the Cedar street property, which note at the time of the trial had not been paid.

The trial judge filed a written opinion on the motion to enter judgment notwithstanding the verdict; and, omitting portions of the opinion which related to matters that are not now here involved, and, after repeating the substance of the testimony with reference to what was said by Mrs. Hoffman in the presence of her husband and assented to by him, the court said:

"When the proofs were closed counsel for the estate asked that a verdict be directed against the claimant. Decision on such motion was reserved under the provisions of Act No. 217 of the Public Acts of 1915. The cause was submitted to the jury and a verdict rendered and recorded as above stated. Counsel have now further argued such request. The claim of the estate is that the evidence submitted does not establish an express contract, nor is it sufficient on which to imply a contract, when the relationship of the parties is considered.

"Counsel seem agreed that the proofs are not sufficient to support an express contract. The facts relied upon to establish an implied contract are:

"*First.* That claimant and her husband closed their own home and went to that of her father and mother to look after the home and attend her mother at their request.

"*Second.* That the mother said to her in the presence of her father that if she would do so, 'you will never regret it,' which was assented to by the father.

"In 18 Cyc., at page 412, the rule is thus laid down:

"'The courts regard with suspicion and disfavor claims brought against a decedent's estate for personal services rendered by relatives, especially where the latter are members of his immediate family or household, as the presumption is that such services, between persons occupying such relations, are intended to be gratuitous.'

"Stress is laid by the writer in the concluding part of the paragraph on the fact that such claims are more favorably regarded when decedent and claimant do not live together. All the Michigan cases cited are, I believe, in harmony with this rule. While there need not be an express contract, in terms, the proofs must be of such a nature that one can be implied, and such proofs must overcome the presumption arising from the family relation. It is not enough to prove that the care was rendered. The proofs must go further and show that they were rendered under such circumstances as rebut the presumption that they were gratuitous and justify the inference that the daughter expected to be compensated, and the father expected to pay her for the same. See *Ashley* v. *Smith's Estate,* 152 Mich. 197; *Weessies* v. *Van Dyke's Estate,* 159 Mich. 180; *Maynard* v. *Schrumpf's Estate,* 192 Mich. 494.

"Let us now apply the rules just stated to the facts in this case. The claimant and her husband had for many years lived separate and apart from her parents, though in the same city; they shut up their home and went to the parents' home at their request; they remained there for more than a year, until the mother's death. They were urged to come, and assured that if they did they would never regret it. These facts, undisputed, seem to me much stronger than those established in the *Ashley Case,* which the court held justified the jury in finding for the claimant. We have here a valuable service rendered, a service consisting not only of tender care and gentle ministrations to a mother afflicted with an incurable disease, but one in which domestic duties were performed. We find the

daughter giving up her own home, her interest in society, the pleasures of life which she had theretofore enjoyed, to attend at the bedside of her stricken mother. This filial love and affection would prompt her to do. But when to this is added her services as a housekeeper, services which could well have been performed by any competent domestic, a different condition is presented, and which, I think, under the proofs, fully justified the jury in finding that such services were rendered under expectation on the part of both father and daughter, that they should be reasonably compensated for."

It was the argument of counsel for the appellant in · this court that there was no evidence from which a contract could be implied. In addition to the authorities cited by the trial judge, counsel for appellant also cite *Sammon* v. *Wood,* 107 Mich. 506; *In re Abel's Estate,* 173 Mich. 93; *In re Colburn's Estate,* 153 Mich. 206; *Decker* v. *Kanous' Estate,* 129 Mich. 146.

In *Re Abel's Estate, supra,* we said:

"It is not essential, to a recovery by a child for services rendered to a parent, that a formal contract be established in relation thereto; but if the facts and circumstances attending the performance of the work and in its acceptance are sufficient to rebut the presumption that the services were gratuitous, and to authorize the inference that both parties acted under the understanding that they were to be paid for, the parent is liable."

Upon this subject an interesting note will be found appended to the case of *Hodge* v. *Hodge,* 11 L. R. A. [N. S.] 873 (47 Wash. 196).

Some respectable courts have gone to the extent of holding that a child living separate and apart from a parent, who is himself in comfortable circumstances, is under no obligation to perform services for him without payment, and consequently the presumption against payment does not obtain. 21 Am. & Eng. Enc. Law (2d Ed.), p. 1063, and cases cited.

We do not, however, assent to this view. The better doctrine is that expressed in *Wessinger* v. *Roberts,* 67 S. C. 240, the headnote of which case reads as follows:

"The presumption that services rendered to a mother by a daughter are gratuitous, is not of itself destroyed by the fact that they were not members of the same household, yet this fact weakens the presumption, and it may be regarded as giving support to other facts tending to establish an implied contract."

We think there were certain significant facts in the case which warranted the learned trial judge in submitting the case to the jury. It is undisputed that Mr. Hoffman and his wife were living alone in the homestead. The claimant, a daughter, with her husband, had been living since 1898 in their own rented home, but in the same city. They were sent for by the parents. The request was made as above set forth. It would seem that Mrs. Hoffman, with the consent of her husband, gave herself into the care and charge of her daughter, who not only took personal care of her mother, but entire charge of the household, and directed its affairs for over one year. The extent and character of the services rendered have been held to be important factors in determining whether they are to be regarded as gratuitous. The circumstances surrounding the rendering of the services here, together with the expression made by the mother and assented to by the father, which we have quoted, were sufficient, in our opinion, to send the case to the jury. We are not aware of any decision of this court which will be disturbed by holding that the judgment, including interest, for the small sum found by the jury, should be affirmed; and the same is affirmed accordingly.

BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred. OSTRANDER, C. J., and KUHN, J., did not sit.