REDMON v. SIEBER'S ESTATE.

1. TRIAL — ESTATES OF DECEDENTS — EVIDENCE — SUFFICIENCY — DIRECTED VERDICT.
    Evidence in support of plaintiff's claim for services against the estate of a decedent, *held*, sufficient to justify the trial court in refusing to direct a) verdict in favor of defendant.

2. SAME—WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.
    Where the trial judge rejected plaintiff's testimony in support of her claim against decedent's estate as incompetent because equally within the knowledge of the deceased, and properly instructed the jury as to) plaintiff's status as a witness, it cannot be said that the offer of the incompetent testimony constituted reversible error.

3. SAME—APPEAL AND ERROR—ARGUMENT OF COUNSEL.
    Where the record shows that argument of plaintiff's counsel, complained of as error, was in reply to argument of defendant's counsel, the case will not be reversed therefor.

Error to Lapeer; Williams (William B.), J. Submitted April 22, 1921. (Docket No. 12.) Decided June 6, 1921.

Kate Redmon presented a claim against the estate of Anthony Sieber, deceased, for services rendered. The claim was allowed in part only by the commissioners, and plaintiff appealed to the circuit court. Judgment for plaintiff.    Defendant brings error. Affirmed.

*Theo. D. Halpin*, for appellant.

*B. F. Reed*, for appellee.

MOORE, J.    The trial judge stated the issues involved in this case in his charge to the jury as follows:

"1. Gentlemen of the jury: Katie Redmon presents the claim against the estate of her uncle, Anthony Sieber, for services which she claims to have rendered for him from June 15, 1912, to April 28, 1915.   You are to determine this case not according to the standard of whether you think the claimant equitably ought or ought not to have the claim allowed.   You are to determine it on the theory of whether or not as a matter of law, as the court gives the law to you, she is entitled, as a matter of law, to have her claim in whole or in part.

"2. Unfortunately we are not to have the benefit of the evidence of the two parties who know about the transaction and could tell you just what the arrangement was.    Anthony Sieber's lips have been closed and sealed by death, and Kate Redmon's lips are just as effectively closed and sealed, so far as this case is concerned, by the statutes of this State, which provide that when one party to a controversy is dead and that matter comes into litigation, the living party may not testify to any fact equally within the knowledge of the one who is dead.    So that Kate Redmon cannot give you her version of what the arrangement was, if any, between her and Anthony Sieber because Anthony Sieber is not here to give his version, and as Anthony Sieber must remain silent, in that regard, so Kate Redmon must remain silent, and you are to determine the case without the testimony of either of them.

"3. Kate Redmon was born in the home of Anthony Sieber and his mother, and lived there in the family

until she was some fifteen years old, when she went to live at North Branch where she remained for a few years and then returned to the home of her grandmother and uncle Anthony Sieber. What induced her to return or why she returned does not appear from the evidence. She remained a member of her uncle's family from June 15, 1912, to April 28, 1915, and during that time rendered services to members of the family for which she claims the estate of Anthony Sieber is indebted to her, and that is the claim in controversy before you here.

"4. Now I charge you that the courts regard with suspicion and disapproval claims brought against a decedent's estate for personal services rendered by relatives, especially when the latter are members of his immediate family, as the presumption is that such services between persons occupying such relations are intended to be gratuitous. They are different from services rendered by a stranger who works for another, and as I have said the presumption is that such services were gratuitous, and before the claimant can recover for such services she must satisfy the jury by a preponderance of the evidence that the services were not gratuitous on her part; that they were rendered, by her, expecting at the time the services were rendered that she would be compensated therefor, and they were not received by her uncle as gratuitous services, but with the expectation on his part that he would pay for them.

"5. Now you will notice that I have said that at the time the services were rendered the claimant must have intended to charge for them in order that she may recover. If at the time these services were rendered she did not intend to charge her uncle for those services, she cannot afterwards for any reason, even if she thinks she ought to have pay for her services, she would not have a right and could not recover unless at the time she rendered the services she expected pay for them, and if she subsequently changed her mind to the effect she ought to have or should have pay for her services, that would not entitle her to recover.

"6. I charge you that in order to entitle claimant to recover in this case it is not necessary that you find

that there was any express agreement on the part of Anthony Sieber to pay her for her services, and an express agreement on her part to work for him for wages. I charge you that there is no evidence in this case of any express contract on the part of Anthony Sieber to pay Kate Redmon for her services, but if you find that Anthony Sieber intended to pay Kate Redmon—if you find that Anthony Sieber expected to pay Kate Redmon for her services and she rendered the services expecting at the time she would receive pay for them, then so far as that feature of the case is concerned a liability would arise on the part of Anthony Sieber to pay her for such services. A contract may be implied from circumstances, but the circumstances must be such as will overcome the presumption that the services were gratuitously rendered. She must, in order to enable her to recover, overcome that presumption by a preponderance of the evidence. Anthony Sieber had no children when he died. He had a sister and two nieces. I charge you the mere fact that he may have expressed an intention that his sister and two nieces should share his property equally, or that Kate Redmon should receive some of his property, would not be evidence that he was indebted to her for her services. It could with the same propriety be said that it was evidence that he was indebted to his sister and the other niece for services.

"7. In this case it is not essential to a recovery that a formal contract be established in reference thereto, but before claimant can recover she must prove facts and circumstances attending the performance of the work and its acceptance sufficient to rebut the presumption that the services were gratuitous, and to authorize the inference that both parties agreed and understood that they were to be paid for.

"8. Unless you find that at the time the services were rendered that Anthony Sieber and Kate Redmon both understood that Anthony Sieber would pay Kate Redmon for her services your verdict will be for the estate, disallowing the claim.

"9. Statements of Anthony Sieber that he expected to do something for Kate Redmon which go no further than to indicate he expected to make provision for her to share in his estate, will not warrant you in allowing

her claim, or any part of it, and you will not be justi-
fied in allowing her claim or any part of it, on the
theory that you think Anthony Sieber should have made
some provision for Kate Redmon, and unless you find
that the services were rendered with the understand-
ing on the part of Anthony Sieber that he was to pay
for them, and with the understanding on the part of
Kate Redmon that Anthony Sieber would pay her for
them, you will disallow the claim.

"10. Now, gentlemen of the jury, in a nutshell then,
the law of the case is this: If you find from the testi-
mony that at the time these services were rendered,
Kate Redmon expected to receive pay for them, and
Anthony Sieber expected to pay her for them, then she
is entitled to receive whatever the services were
reasonably worth.

"11. If on the other hand you find that at the time
the services, unless you find that at the time the
services were rendered Kate Redmon intended to
charge for them and Anthony Sieber expected to pay
for them, your verdict will be in favor of the estate.

"12. If you find for the claimant you will simply say
that you find a verdict for the claimant in whatever
amount you find. If you find for the defendant or for
the estate, you will simply say, that we disallow the
claim, and your verdict will be put in form by the
clerk."

The jury rendered a verdict for the claimant and
assessed the damages at $1,768 and judgment was
rendered thereon. The case is brought here by writ
of error.

The assignments of error are grouped by counsel as
follows:

(1) The question of defendant's right to a directed
verdict.

(2) The conduct of counsel in placing claimant on
the stand, asking her questions which he knew to be in-
competent for the purpose of requiring defendant to
object.

(3) Improper argument to the jury by plaintiff's
counsel.

1. Appellant insists that the court should have directed a verdict in favor of the estate, citing *Decker v. Kanous' Estate,* 129 Mich. 146, and other cases. In this connection we quote some of the testimony given on the part of the plaintiff.   One witness testified in part:

"Well, I was there one time when the old lady was very bad and Anthony was alone there with her in the room and I heard of her being bad again, and I went up there to see how they were getting along as usual, and went into the bedroom where they were.   Anthony was sitting there, and the old lady was bolstered up in bed and through the conversation she said to me, 'John, I have often told Anthony that he ought to fix something for Katie for her services, but he will just let it go and let it go, just that way, until it will be too late, I am afraid;' and the old lady said that to me, to the two of us.

"*Mr. Halpin:* I ask that that be stricken out, and I think that counsel ought to be reprimanded for bringing that in after the ruling of the court this morning.

"*The Court:* Yes.

"*Mr. Reed:* We haven't got it all.

"*Q.* What did Anthony say?

"*A.* Anthony says 'I will have to take care of that, Mother;' just what he said to his mother. 'I will have to take care of it.' "

Another testified in part:

"Mrs. Sieber has talked with me about her services in Anthony's presence.   She has said to me time after time, 'How bad I want Anthony to go and draw up papers so Katie would have something.   I see my time is short, and worried and worried about it;   I do wish he would go and do something for Katie.'

"*Q.* What did Anthony say?

"*A.* Anthony says, 'Mother, I will do just as you want me to do.'

Another witness said in part:

"I never heard Anthony make the statement that if it wasn't for her they would require a girl and nurse as well.   I never heard him say what he was going to do

for Katie for her services. I have heard him state that Katie was to receive a share of his property for the services that she performed. He did not tell me that she worked there and stayed there under that arrangement, expecting a share of his estate for the work that she done. He expected to pay her for her services. He said she was a good girl. *    *    *

"About the time of her marriage he told me he was to give her something for her services."

We think the court did not err in refusing to direct a verdict. *In re Williams' Estate,* 106 Mich. 490; *Sammon* v. *Wood,* 107 Mich. 506; *Weessies* v. *Van-Dyke's Estate,* 159 Mich. 180; *Ashley* v. *Smith's Estate,* 152 Mich. 197; *Maynard* v. *Schrumpf's Estate,* 192 Mich. 494; *In re Scully's Estate,* 199 Mich. 181; *In re Hoffman's Estate,* 200 Mich. 464.

2. The record shows as follows:

"Kate Redmon was called as a witness:

"I am the claimant in this case and I am thirty years old. Anthony Sieber was my uncle and his mother was my grandmother. I couldn't just say but I was around 14 or 15 when I went to North Branch and I was away from there about eight years. I came down to my uncle's in 1912. I had been living at North Branch the eight years prior to that with Mrs. Sohn.

"*Q.* When you came back there in 1912 what time of the year did you come back?

"*A.* Why, the 1st of June.

"*Mr. Halpin.* I object to this as incompetent.

"*The Court:* Wouldn't that be incompetent under the statute, Mr. Reed?

"*Q.* You may state, Mrs. Redmon, who sent for you to come back.

"*Mr. Halpin:* I object to that as incompetent and I object to the calling of this witness and the offer of this testimony, requiring us to make this objection. It is error for him to do so and I make that objection.

"*The Court:* You understand the effect of the statute?

"*Mr. Reed:* They can waive it.

"*The Court:* What?

"*Mr. Reed:* He can waive it.

"*Mr. Halpin:* I submit the position he has taken in the case, putting it in shape so we must object is error, and I take exception to it.

"*The Court*: I will exclude the testimony, Mr. Reed. That is all I can do.

"*Q.* When were you married Mrs.—?

"*A.* 1915, the 28th day of April.

"*Q.* You may state whether or not you were ever paid anything by Anthony Sieber for your services that you rendered there?

"*Mr. Halpin:* To that we object.

"*The Court:* Have you any question about what the ruling of the court ought to be, Mr. Reed?

"*Mr. Reed:* I want to make the record.

"*The Court:* That isn't the question I asked you. Don't you know that testimony is not admissible under the statute?

"*Mr. Reed:* I thought, therefore, they would object and the court would rule on it.

"*The Court:* Do you think you ought to offer testimony that you know is incompetent under the statute? I will exclude the testimony.

"*Mr. Reed:* Step aside; step aside. We rest."

Counsel for appellee expresses regret at what occurred, but insists it is not reversible error. The trial judge not only sustained the objection of counsel to the offered testimony but correctly charged the jury, as will be seen by a reference to the charge, as to the status of Kate Redmon as a witness. We do not think the case should be reversed for what occurred in this connection. See *Zimmerman* v. *Whiteley,* 134 Mich. at page 44.

3. Was the argument of counsel reversible error? An inspection of the record shows it was in reply to the argument of counsel for appellant.

The case was carefully and fairly submitted to the jury by the trial court.

Judgment is affirmed, with costs to the appellee.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.